**AMERICAN TRUCKING ASSOCIA-
TIONS, INC., et al.**

**v.**

**UNITED STATES of America et al.**

**Civ. A. No. A–72–CA–81.**

United States District Court,
W. D. Texas,
Austin Division.

May 18, 1973.

Phillip Robinson, Austin, Tex., Peter T. Beardsley, Washington, D. C., Grady L. Fox, Amarillo, Tex., for plaintiff.

C. J. Calnan, San Antonio, Tex., Geraldine R. Keyes, Washington, D. C., for U. S. and Interstate Commerce Comm'n.

John F. Heard, Edwin N. Bell, Houston, Tex., for Southern Pacific Transport Co.

Before THORNBERRY, Circuit Judge, and ROBERTS and WOOD, District Judges.

## MEMORANDUM OPINION

ROBERTS, District Judge.

This is an action brought by the American Trucking Associations, Inc., and several protesting trucking firms to set aside an order of the Interstate Commerce Commission. The order granted Southern Pacific Transport Company of Texas and Louisiana a certificate of public convenience and necessity authorizing transportation in interstate or foreign commerce as a common carrier by motor vehicle in Texas and Louisiana without previously existing restrictions.

Southern Pacific Transport Company of Texas and Louisiana (hereafter SPT) is a wholly owned subsidiary of Southern Pacific Transportation Company (SP), a railroad operating company. SPT operates as a motor carrier in Texas and Louisiana. The company has an extensive system of regular routes, but its ability to operate over these routes is severely limited by restrictions imposed on its operating authority. These restrictions generally require SPT's operations to be auxiliary or supplemental to SP's rail services. Shipments that are auxiliary or supplemental to rail service must move on rail bills of lading. Regulations often require prior or subsequent rail hauls, and key point restrictions sometimes necessitate the use of circuitous routes. The motor carrier routes generally parallel the railroad tracks. As might be expected labor jurisdictional problems, additional loading and unloading required to shift from one mode of transportation to another, and added paperwork and record-keeping cause a considerable loss of efficiency.

However, the fact that inefficiency results is hardly justification for removal of the restrictions. Congressional policy is to "recognize and preserve the inherent advantages" of each mode of transportation. 54 Stat. 899, see I.C.C. v. Parker, 326 U.S. 60, 65 S. Ct. 1490, 89 L.Ed. 2051 (1945). At least two sections of the Interstate Commerce Act have been important in cases of this nature. Section 5(2)(b) [1] greatly restricts grants of authority permitting railroads to acquire motor carriers. Section 207(a) [2] pertains to the issuance of certificates of public convenience and necessity.

In considering Section 207 applications by rail-affiliated motor carriers the Commission must consider the Act as a whole. Section 5(2)(b) is not a rigid limitation on the issuance of Sec-

---

[1]. Section 5(2)(b) of the Interstate Commerce Act provides in part as follows:

Provided, That if a carrier by railroad subject to this part, or any person which is controlled by such a carrier, or affiliated therewith within the meaning of paragraph (6), is an applicant in the case of any such proposed transaction involving a motor carrier, the Commission shall not enter such an order unless it finds that the transaction proposed will be consistent with the public interest and will enable such carrier to use service by motor vehicle to public advantage in its operations and will not unduly restrain competition. 49 U.S.C.A. § 5(2)(b)

[2]. Section 207(a) of the Act provides in part as follows:

(a) Subject to section 210, a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this part and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present of future public convenience and necessity; otherwise such application shall be denied . . . .. 49 U.S.C.A. § 307(a)

tion 207 certificates, although it should be considered a "guiding light". American Trucking Assns. v. United States, 355 U.S. 141, 78 S.Ct. 165, 2 L.Ed.2d 158 (1957). Generally rail-affiliated motor carriers are required to offer services which are auxiliary or supplemental to the parent company's rail service, United States v. Rock Island Co., 340 U.S. 419, 71 S.Ct. 382, 95 L.Ed. 391 (1951), but they may be permitted to depart from these restrictions when there is a showing of special circumstances. American Trucking Assns. v. United States, 364 U.S. 1, 80 S.Ct. 1570, 4 L.Ed.2d 1527 (1960).

The Commission's finding of special circumstances in this case centered around the small shipments problem. In a related case the Commission characterized the small shipment situation to be a "problem of monumental proportions and continuing duration." Santa Fe Trail Transp. Co. Ext.—Colo. and Kan. Points, 111 M.C.C. 224, 232 (1970). It has existed for many years, and it can be predicted that it will exist in the future. Simple economics indicate that the transportation of small shipments to small cities is less efficient and more costly than shipment of a fully loaded truck or railroad car from one large distribution center to another. These shipments are particularly impractical for railroads as they are tied to more fixed routes and large and bulky rolling stock. In many states the railroads have placed an embargo on all LCL[3] shipments. According to the Commission the railroads were forced out of this service because of "a changing technology which they could not or would not meet." Southern Pacific Transp. Ext.—Elimination of Restrictions, 117 M.C.C. 224, 331 (1972).

The Commission indicated in its consideration of this case that the nationwide LCL system is no longer viable. In fact it characterized the system as being "dead as a doornail." *Id.*

The Commission found a two pronged effect of the demise of the LCL system which serves as a basis for a finding of special circumstances. First, it denies the public an alternative means of transportation for these shipments. Second, the current absence of a viable LCL system reduces the competitive impact of a grant of unrestricted authority to a rail affiliate. If the LCL system were economically feasible, a lifting of SPT's restrictions would find the motor carriers competing with SPT's LTL service at the same time SP was providing LCL service at lower rail rates. *Id.*, at 332. Such a situation would be one of the types of occurrences Congress was attempting to avoid by structuring transportation policy and the Act to require a recognition of the advantages of each mode of transportation.

The special circumstances are accentuated by the increase in the demand for small shipment service. Whether the fault rests with the railroads, the motor carriers, the Commission or at some other doorstep, the problem is there, and it is the public that suffers. The record indicates that the needs of small shippers have received little attention from the existing carriers. The Commission found that

> [t]he specific facts and circumstances which in this proceeding establish that the public need requires a grant of functionally unrestricted motor carrier authority to SPT lie in the inability or refusal of existing motor carriers to provide reasonably efficient and responsive services in the transportation of small shipments for consignors and consignees in the considered territory, particularly for small shippers or for those at small intermediate points. The inadequacies of existing services range from the refusal or failure of a number of carriers to provide regular LTL services at small intermediate points to more complex situations where regular

---

3. LCL is an abbreviation for "less than carload." It refers to shipments of small quantities by railroads. The trucking equivalent is LTL or "less than truckload."

LTL services are provided, but are not fully responsive to the needs of shippers. At the same time applicant, SPT, has widespread operations and facilities in Texas and Louisiana including motor vehicle equipment, terminals, commission agents at many of the small points involved, and existing motor carrier operating schedules, but, in many cases, it is prevented by its rail-substituted-services restrictions from providing anything approaching an efficient and responsive service for the shipping public. *Id.* at 332–333.

■ No special formula exists by which special circumstances can be precisely and objectively identified; however, it is clear that, where, as here existing carriers are unwilling or unable to perform the required service, special circumstances can be indicated. American Trucking Assns. v. United States, 364 U.S. 1, 14, 80 S.Ct. 1570, 4 L.Ed.2d 1527 (1960). The existence of other non-rail affiliates serving the area will not negate a finding of special circumstances if the service they provide is inadequate. American Trucking Assns. v. United States, 355 U.S. 141, 78 S.Ct. 165, 2 L.Ed.2d 158 (1957); American Trucking Assns. v. United States, 260 F.Supp. 386 (D.D.C.1966) aff'd per curiam 387 U.S. 93, 87 S.Ct. 1504, 18 L.Ed. 2d 585 (1967). Clearly then, the situation described in this record can, as a matter of law, constitute special circumstances.

The next inquiry must be whether there is substantial evidence to support both a finding of special circumstances and a finding of public convenience and necessity. The substantial evidence standard has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938), as "enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury," N.L.R.B. v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1939), and as "something less than the weight of the evidence." Consolo v. Federal Maritime Comm., 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L. Ed.2d 131 (1966). By any definition it imposes a difficult burden on one seeking to establish that an administrative determination was not supported by substantial evidence.

■ The record in this case is far too voluminous to detail here or even to adequately summarize. It includes more than 11,000 pages of transcript and more than 300 exhibits taken from 230 witnesses during 60 days of hearings in Texas, Louisiana and Washington, D.C. The testimony is ably summarized by the Commission, Southern Pacific Transp. Co. Ext.—Elimination of Restrictions, 117 M.C.C. 224, 248–324 (1972), and by summaries presented to the Court by the parties to the action. The record reveals a lack of adequate service for small shippers throughout the region and clearly supports the conclusion that the findings of the Commission as to special circumstances and public convenience and necessity are supported by substantial evidence.

■ A remaining issue is whether SPT was required to demonstrate that public convenience and necessity require a lifting of restrictions on every route and point served. Certainly a request for service from one city to a second city would not justify the issuance of a certificate to serve an intermediate point without a separate showing of public convenience and necessity as to the intermediate point. T.S.C. Motor Freight Lines, Inc. v. United States, 186 F.Supp. 777 (S.D.Tex.1960) aff'd sub nom. Herrin Transportation Co. v. United States, 366 U.S. 419, 81 S.Ct. 1356, 6 L.Ed.2d 387 (1961). However, a case which involves a problem much closer to that posed in the instant proceeding is Atlanta-New Orleans Motor Freight Co. v. United States, 197 F.Supp. 364 (N.D. Ga.1961). There proof of public conven-

ience and necessity to every point was not required where service was sought to be extended from 150 points already served to Atlanta. A need for service between Atlanta and all points in the disputed area was shown by testimony as to specific need at a representative number of points. A showing of need at numerous representative points raises a rebuttable presumption of a requirement for extended service at those points for which testimony is not available. The present proceeding provides an even stronger case for the use of a showing of a representative number of points. An area-wide problem has been shown to exist, SPT already provides restricted service throughout the area, and the proof of the requirement of public convenience and necessity can logically be made on an area-wide basis.

The unique nature of this case lies in the size of the grant of authority. The special circumstances doctrine has never been applied on such a massive scale,[4] but the number of miles included, the number of cities served and the volume of traffic carried do not dilute the validity of the doctrine. The proof required necessarily will be more extensive in a case of this magnitude, but this applicant has met that burden.

It is the finding of this Court that the Commission correctly applied the law and that its conclusions are supported by substantial evidence. It is accordingly

Ordered, adjudged and decreed that all relief sought by plaintiffs be, and hereby is denied.

4. Presently SPT has 233 miles of interstate authority, 6579 miles of interstate and intrastate authority, and 1519 miles of non-duplicated intrastate authority. The total interstate authority from which restrictions are sought to be lifted is 6,812 miles. Additionally a few new routes are sought to fill gaps in the current system.