570 F.2d 773
 TRI-STATE MOTOR TRANSIT CO., Petitioner,
and
Davis Transport, Inc., Intervenor-Petitioner,
v.
UNITED STATES of America and Interstate Commerce Commission,
Respondents,
and
Superior Trucking Co., Inc., Cherokee Hauling & Rigging,
Inc., A. J. Metler Hauling & Rigging, Inc., and
Moss Trucking Co., Inc., Intervenor-Respondents.
 No. 77-1359.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 10, 1978.
Decided Feb. 16, 1978.
 
 Albert Thomson of Linde, Thomson, Fairchild, Langworthy & Kohn, Kansas City, Mo., argued, and Max G. Morgan, Oklahoma City, Okl., on brief, for petitioner Tri-State Motor Transit.
 H. S. Melton, Jr., Paducah, Ky., argued, and Gregory M. Rebman, St. Louis, Mo., on brief, for intervenor-petitioner, Davis Transport, Inc.
 Wayne M. Senville, I. C. C., Washington, D. C., argued and John H. Shenefield, Asst. Atty. Gen., Robert J. Wiggers and Robert B. Nicholson, Attys., Dept. of Justice, Washington, D. C., Mark L. Evans, Gen. Counsel, and Charles H. White, Jr., Associate Gen. Counsel, Washington, D. C., on brief for respondents ICC and United States.
 Paul M. Daniell, Atlanta, Ga., argued, Morton E. Kiel, New York City and Ernest A. Brooks, II, St. Louis, Mo., on brief, for intervenors-respondents, Superior Trucking Co., Inc., et al.
 Before MATTHES, Senior Circuit Judge, BRIGHT and STEPHENSON, Circuit Judges.
 MATTHES, Senior Circuit Judge.
 
 
 1
 Petitioner Tri-State Motor Transit Co. seeks review of an order of the Interstate Commerce Commission granting respondent-intervenors, Superior Trucking Co., Inc., Cherokee Hauling & Rigging, Inc., A. J. Metler Hauling & Rigging, Inc., and Moss Trucking Co., Inc., authority to operate as
 
 
 2
 common carrier(s) by motor vehicle, over irregular routes, of source, special nuclear, and by-product materials, radioactive materials, related radioactive equipment, component parts and associated materials between points in Alabama, Tennessee, Mississippi, Kentucky, Louisiana, Georgia, North Carolina, and Virginia, on the one hand, and, on the other, points in the United States (except Alaska and Hawaii).
 
 
 3
 Superior Trucking Co., 128 M.C.C. 699, 719 (1977). We affirm the order of the Commission.
 
 
 4
 In late 1973, petitioner and respondent-intervenors filed applications for certificates of public convenience and necessity to transport nuclear and radioactive materials. The applications were primarily supported by the Tennessee Valley Authority (TVA). Carolina Power & Light Co. and Edlow International Co. supported certain of the applicants.
 
 
 5
 Tri-State protested[1] the applications of respondent-intervenors because of its greater experience in the field and because it believed that competition would be detrimental to the public interest. Thereafter, Superior Trucking moved to partially dismiss its own application, asserting that it already possessed sufficient operating authority under its various size and weight certificates.[2]
 
 
 6
 Extensive hearings were held before an administrative law judge. On the basis of the record established, a second administrative law judge[3] rendered an initial decision:
 
 
 7
 The issue of whether the public convenience and necessity does now require, or will require the proposal is, as a general proposition, a matter for the Commission to decide, Interstate Commerce Commission v. Parker, 326 U.S. 60, (65 S.Ct. 1490, 89 L.Ed. 2051) (1945); and notwithstanding the heat of contest among interested carriers is a question not private to the competing carriers but is public in nature, Carolina Freight Carriers Corp. v. United States, (D.C.) 297 F.Supp. 848 (1969). It must be realized, too, that when an application is anchored to prospective needs, some projections necessarily are involved. This record is no exception. It has not been possible to establish exact dates for the opening of programmed additional nuclear power units. Construction of these facilities is a complicated and lengthy operation. Yet plans toward eventual added construction have progressed sufficiently to enable a reliable finding that new units will come on line periodically as time goes by. Some locations have been identified already; traffic volumes have been carefully estimated; and existing services have been described and shipping needs expressed. I am satisfied that a prima facie case has been made. Novak Contract Carrier Application, 103 M.C.C. 555 (1967). To be sure, at a time when the Nation is searching for new and more efficient sources of energy, transportation needs in connection with that goal must be considered with care and foresight.
 
 
 8
 This proceeding vividly illustrates that the availability of reliable transportation is the vital economic lifeline which must keep pace with expanding or developing market demands. That concept applies here with special force where the inevitability of increased use of nuclear powered generating plants has been demonstrated. The Judge is aware of protestants' contention that the evidence on this point is unprecise or sketchy. Such charge is too strong and not sustained. Estimates and projections have been thought through. Not only that, but an applicant's burden does not demand specificity for each and every origin with commodities particularized by ingredient. Where, as here, there is specific evidence as to the needs of a part based upon actual experience, an inference as to the requirements of an emerging whole may be drawn.
 
 
 9
 There is no doubt in my mind that awarding authority to these applicants will enable them to serve a useful purpose responsive to an emerging public need. The transportation purpose to be served cannot be served as well by existing carriers and granting authority to these applicants will allow them to perform without endangering or impairing the operations of existing carriers contrary to the public interest.
 
 
 10
 Id. at 716-17. Accordingly, in August of 1975, an order was entered recommending that the authority requested by all five applicants be granted. Id. at 717-18.
 
 
 11
 Superior Trucking's motion to partially dismiss was denied because the administrative law judge concluded that the unique characteristics of nuclear and radioactive commodities brought them outside the scope of a general size and weight authority.
 
 
 12
 In April, 1977, Division One of the Interstate Commerce Commission adopted the essential findings and conclusions set forth in the initial decision of the administrative law judge. Id. at 702. The Commission disagreed with the administrative law judge, however, as to whether nuclear and radioactive materials could be shipped under size and weight authority alone. In the Commission's view:
 
 
 13
 (t)he size and weight protestants hold authority which permits them to transport certain of the involved commodities, (but) they are not authorized to provide a complete service . . . .
 
 
 14
 Id. at 700. Consequently, the Commission granted the authority originally sought by the five applicants on the condition that no duplicative authority be construed from the Commission's action.[4] Id. at 720.
 
 
 15
 Petitions for reconsideration were denied.
 
 
 16
 * We note at the outset that under the Administrative Procedure Act:
 
 
 17
 The reviewing court shall . . . (2) hold unlawful and set aside agency action, findings, and conclusions found to be
 
 
 18
 (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law (or)(E) unsupported by substantial evidence . . . .
 
 
 19
 5 U.S.C. § 706. That statutory directive applies to the present case. See Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 284-86, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974); Warren Transport, Inc. v. United States, 525 F.2d 148, 150 (8th Cir. 1975); see generally K. Davis, Administrative Law of the Seventies §§ 29.00-01 (1976 & Supp.1977).
 
 
 20
 Several recent decisions in this circuit have discussed our limited role in considering petitions for review of Interstate Commerce Commission orders. E.g., B. J. McAdams, Inc. v. ICC, 551 F.2d 1112, 1116 (8th Cir. 1977); Midwest Coast Transport, Inc. v. ICC, 536 F.2d 256, 259-60 (8th Cir. 1976); Hilt Truck Line, Inc. v. United States, 532 F.2d 1199, 1201-02 (8th Cir. 1976); Warren Transport, Inc. v. United States, supra at 149-51. Each of these cases emphasized the narrow scope of our review:
 
 
 21
 In this circuit a petition for review of a Commission's order will be denied on a summary basis when the order is based on the evidence and supported by a rational judgment of the Commission. (emphasis supplied).
 
 
 22
 Warren Transport, Inc. v. United States, supra at 151, quoted in B. J. McAdams, Inc. v. ICC, supra at 1116, Midwest Coast Transport, Inc. v. ICC, supra at 259, and Hilt Truck Line, Inc. v. United States, supra at 1201.
 
 
 23
 Under § 207(a) of the Interstate Commerce Act, the Commission cannot grant operating authority unless it has determined that a proposed service "is or will be a required by the present or future public convenience and necessity." 49 U.S.C. § 307(a). In making that determination, the Commission must decide:
 
 
 24
 (1) whether the new operation or service will serve a useful public purpose, responsive to a public demand or need;
 
 
 25
 (2) whether this purpose can and would be served as well by existing lines or carriers;
 
 
 26
 (3) whether this purpose can be served by the applicant with the new operation or service proposed without impairing the operations of existing carriers contrary to the public interest.
 
 
 27
 See Pan-American Bus Lines Operation, 1 M.C.C. 190, 203 (1936); Midwest Coast Transport, Inc. v. ICC, supra at 259-60.
 
 In addition, an applicant must show:
 
 28
 (a) the commodities to be shipped;
 
 
 29
 (b) the points to or from which commodities are to be shipped;
 
 
 30
 (c) the volume of freight to be tendered;
 
 
 31
 (d) the transportation services presently available;
 
 
 32
 (e) any deficiencies in existing services.
 
 
 33
 Id. at 260.
 
 
 34
 The case at bar involves future needs. In such cases, the Interstate Commerce Commission's application of the above criteria inevitably depends to some extent on speculations, projections, and prophecies. But, as the Supreme Court has stated:
 
 
 35
 (U)ncertainties as to the future . . . need (not) paralyze the Commission into inaction. It may be that the public interest requires that future shipping needs be assured rather than left uncertain. The Commission has the discretion so to decide.
 
 
 36
 United States v. Detroit & Cleveland Navigation Co., 326 U.S. 236, 241, 66 S.Ct. 75, 77, 90 L.Ed.2d 38 (1945), quoted in Hilt Truck Line, Inc. v. United States, supra at 1202 n.4.
 
 
 37
 Mindful of these principles, we proceed to a brief discussion of the issues raised in this petition.
 
 
 38
 Tri-State interprets the Commission's order as a grant of operating authority to transport nuclear and radioactive material to carriers holding only size and weight certificates. Tri-State misreads the Commission's ruling.
 
 
 39
 The Commission merely stated that the administrative law judge had been incorrect in holding that nuclear and radioactive materials could not be transported under size and weight authority. Superior Trucking Co., supra at 700. That dictum did not grant operating authority. Tri-State's objection is therefore unfounded.
 
 
 40
 Tri-State also argues that various new developments in the nuclear industry warrant a remand of the case to the Commission. We disagree.
 
 
 41
 With every administrative action there is a period between the close of the record and the issuance of the agency's final decision.
 
 
 42
 If upon the coming down of the order litigants might demand rehearings as a matter of law because some new circumstance has arisen, some new trend has been observed, or some new fact discovered, there would be little hope that the administrative process could ever be consummated in an order that would not be subject to reopening.
 
 
 43
 ICC v. Jersey City, 322 U.S. 503, 514, 64 S.Ct. 1129, 1134, 88 L.Ed. 1420 (1944). We therefore decline Tri-State's invitation to order new administrative hearings in this case.[5]
 
 
 44
 Both Tri-State and petitioner-intervenor Davis Transport attack the breadth of operating authority granted by the Commission, though neither requests specific territorial limitation. We do not believe that the Commission's order is overly broad.
 
 
 45
 The operating authority granted by the Commission was necessarily expansive. TVA demonstrated with reasonable certainty that it required geographically flexible transportation services in order to assure adequate supplies of nuclear fuel and adequate disposal of nuclear wastes in an obviously burgeoning field. See Frostways, Inc., 117 M.C.C. 209, 215 (1972). Certainly in a future needs case such as this the Commission can properly decide to authorize broad authority in order to provide both stability and growth in an area vital to the public interest. See United States v. Detroit & Cleveland Navigation Co., supra.
 
 
 46
 Davis Transport also asserts (1) that the competition which would be fostered by the authority granted would be disastrous and (2) that the applicants were not fit to safely transport the hazardous commodities involved here.
 
 
 47
 The expert judgment which the Commission exercised with regard to these matters did not exceed its wide discretionary latitude. See Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc., supra at 284-86; United States v. Detroit & Cleveland Navigation Co., supra. As this court has emphasized:
 
 
 48
 It is rare that a Commission order is not based on relevant factors or that the exercise of its expertise can be termed such an abuse of discretion as to require reversal by the court.
 
 
 49
 Warren Transport, Inc. v. United States, supra at 151, quoted in Hilt Truck Line, Inc. v. United States, supra at 1204.
 
 
 50
 We have carefully reviewed the exhaustive, multi-volume record in this case, and have concluded that the Commission's findings are supported by substantial evidence and that the Commission's order was not arbitrary, capricious or otherwise contrary to law.
 
 
 51
 The petition for review is denied.
 
 
 
 [1]
 A number of trucking companies protested the applications: Leonard Brothers Trucking Co., Inc.; International Transport, Inc.; McCormack's Highway Transportation, Inc.; Dealers Transit, Inc.; C & H Transportation Co., Inc.; Home Transportation Co., Inc.; and Davis Transport, Inc
 Davis Transport has pursued its objections to the grant of the requested authority to any of the applicants by appearing before this court as a petitioner-intervenor. As a result of its protest, Tri-State lost the support of TVA. Despite that loss of support, Tri-State's application for operating authority was granted along with the applications of intervenor-respondents.
 
 
 [2]
 Size and weight certificates authorize the transport of commodities which, because of their size or weight, require special handling or the use of special equipment. See Hove Truck Line v. Eldon Miller, Inc., 63 M.C.C. 753, 756 (1955)
 
 
 [3]
 The administrative law judge who conducted the hearings left the employ of the Interstate Commerce Commission before a decision was issued
 
 
 [4]
 The certificate issued to Cherokee Hauling & Rigging was of a three-year duration. The certificates issued to the other four applicants were limited to five years
 
 
 [5]
 Nearly five years have passed since the certificates involved here were first sought. To remand the case would only further postpone a final decision. We especially do not favor such protracted litigation when delay is so clearly inimical to the public good