**PACKER TRANSPORTATION CO., Petitioner,**

v.

**UNITED STATES of America et al., Respondents.**

No. 77–2150.

United States Court of Appeals, Ninth Circuit.

May 11, 1979.

James H. Gulseth (argued), San Francisco, Cal., for petitioner.

Mark L. Evans, Gen. Counsel, Jeffrey A. Knoll, ICC, Robert B. Nicholson, Washington, D. C., Bruce W. Shand (argued), Salt Lake City, Utah, for the U. S.

Before TRASK and WALLACE, Circuit Judges, and ZIRPOLI,* District Judge.

ZIRPOLI, District Judge.

Petitioner, Packer Transportation Co. ("Packer"), seeks review of an order of the Interstate Commerce Commission ("ICC") granting authority to Grover Trucking Co. ("Grover")[1] under which Grover is authorized to, *inter alia*, transport composition board from Empire, Nevada, to points in Oregon, Washington, and Idaho. Jurisdiction is properly invoked under 28 U.S.C. sections 2321(a) and 2342(5). Because we agree that the action of the ICC fails to meet the "substantial evidence" test of 5 U.S.C. section 706(2)(E), the petition for review is granted and the order vacated as hereinafter provided.

Petitioner Packer is a motor carrier operating under a certificate of public convenience and necessity issued by the ICC that permits it to, among other things, transport gypsum, gypsum products, and plasterboard from Empire, Nevada, to points in California, Idaho, Oregon, and Washington. A single Empire business, United States Gypsum Company, produces all of the products carried outbound by Packer. These wallboard shipments from Empire account for about one-third of Packer's gross revenue and provide a backhaul commodity for Packer's transportation of lumber products from Oregon and California to Nevada.

On January 16, 1975, Grover filed an application for authority to transport numerous commodities between various points in the Western States, among which was a request to transport composition board and wallboard from all points in Nevada to all points in Washington, Oregon, and Idaho. The application drew protests from eighteen other carriers, including petitioner Packer. The basis of Packer's protest was that it did not want to lose any of the Empire wallboard traffic to Grover. Prior to a hearing on the application, Packer and Grover entered into an agreement whereby Packer would withdraw its protest and Grover would submit a restrictive amendment to exclude Empire from its request for outbound authority from Nevada. In compliance with this agreement, Grover attempted to limit its application. The ICC, however, denied the request and proceeded on the application as originally filed.

A hearing was held on Grover's application on January 14, 1976, and Grover again attempted to limit its request, noting at the outset that it would produce no evidence to support a grant of outbound authority from Empire. Again the restrictive amendment was rejected by the ICC, the administrative law judge noting commission policies against tendering amendments at the time of the hearing and against "fragmentizing or atomizing" authority. Packer therefore remained as a protestant to Grover's application.

No evidence of need for service of any kind to or from Empire was offered at the hearing, and Mr. Grover testified that he had no such evidence. The only evidence presented of any need for service outbound from any point in Nevada was the testimony of a representative of the Flintkote Company, which indicated a need for carrier service from that firm's facilities in Clark County, and principally from Blue Diamond, to all points in Oregon, Washington, and Idaho. At the time of the hearing, Flintkote was not transporting any of its wallboard products by truck to those states, but the company representative indicated that if Grover obtained the proposed authority, Flintkote would utilize Grover's services. Other shippers, such as Weyerhauser Co., indicated a need for more motor carrier service to supplement the often unreliable rail service, but the company spokesperson appeared to have been discussing service to Colorado and Utah, not in issue here. Other witnesses supported Grover's

---

* The Honorable Alfonso J. Zirpoli, Senior United States District Judge for the Northern District of California, sitting by designation.

1. The term "Grover" will also be used to refer to Mr. Louis Grover, Grover Trucking Company's predecessor in interest. Mr. Grover initially filed the application for authority that is in issue here.

application by stating a need generally for service between points in the Southwest and the Northwest.

Packer, appearing to protest the Grover application, presented the testimony of its president, who stated that the Grover application, if granted, would threaten Packer's business in Empire by diverting service from Packer's principle Empire customer, United States Gypsum. He also testified that Packer's trucks were not operating anywhere near full capacity, and that the Empire gypsum trade, which alone constituted one-third of Packer's business, also provided a return run for shipments of lumber products from the Northwest into Nevada. The combination of the gypsum trade and the return runs of lumber products amounted to about sixty percent of Packer's business, according to its president.

The administrative law judge approved the application in all respects.[2] With respect to Packer's request that Empire be eliminated from the grant of authority, he noted:

> Upon reflection, I decline to impose any limitation as to Empire, Nev. for the reason that to do so is an undesirable atomization of operating authority.

The Initial Decision also recited findings, including the finding that there was more traffic than there was equipment to carry it; that service from existing carriers was inadequate; that no existing carrier was threatened by the grant; and that even if some harm to existing carriers resulted, this was permissible under the circumstances since no grant of authority carries with it a guarantee of protection from competition.

Packer sought administrative review of the Initial Decision, and although the grant of authority was modified in some respects not relevant here,[3] Packer was unsuccessful in its attempt to persuade the Commission to exclude Empire from the area of authority granted to Grover. Grover was issued a certificate of public convenience and necessity on April 14, 1977. Thereafter, Packer timely filed this petition for review. Grover sought and was granted leave to intervene.

■ A grant of authority by the Interstate Commerce Commission to transport particular goods in interstate commerce requires a finding by the ICC that:

> the proposed service, to the extent authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied.

Interstate Commerce Act section 207(a), 49 U.S.C. section 307(a). Because the Act does not define the term "public convenience and necessity," the Supreme Court has concluded that "the Commission possesses a 'wide range of discretionary authority' in determining whether the public interest warrants certification of any particular proposed service." *Schaffer Transportation Co. v. United States,* 355 U.S. 83, 88, 78 S.Ct. 173, 176, 2 L.Ed.2d 117 (1957), citing *United States v. Detroit & Cleveland Navigation Co.,* 326 U.S. 236, 241, 66 S.Ct. 75, 90 L.Ed. 38 (1945). See also *Interstate Commerce Commission v. Parker,* 326 U.S. 60, 65 S.Ct. 1490, 89 L.Ed. 2051 (1945). This circuit has recognized that review of ICC action is conducted with a " 'highly deferential' standard of review." *Short Haul Survival Committee v. United States,* 572 F.2d 240, 244 (9th Cir. 1978). The guideline to be used in determining whether the Commission has acted in accordance with the discretion delegated to it is the National Transportation Policy, 49 U.S.C. Preceding section 1. *Schaffer Transportation Co. v.*

---

**2.** Under the Initial Decision, Grover was granted authority to carry "lumber, lumber mill products, forest products, sawmill products, wood products, composition board and wallboard (i) between points in Washington, Idaho, and Nevada; and (ii) from points in Oregon to points in Wyoming and Arizona; and (iii) from points in Idaho, Montana (except Missoula, Libby, Kalispell, Columbia Falls, Pablo, and Ashland) and Washington (except Griggs, Portland, Albany, Bend and Redmond) to points in Oklahoma and Texas . . . ." Apparently, the reference to Washington in the last description should be a reference to Oregon.

**3.** The Commission eliminated the Idaho gateway contained in the Initial Decision.

*United States, supra,* 355 U.S. at 87–88, 78 S.Ct. 173.

■ Despite the breadth of the Commission's discretion and the narrow scope of review available in the courts of appeals, the ICC, like most government agencies, is subject to the restrictions of the Administrative Procedure Act, 5 U.S.C. sections 551–559, and reviewing courts must apply the standards set forth in 5 U.S.C. sections 701–706. In the instant case, petitioner relies on two provisions of section 706 in its argument that the agency action here should be set aside. Those subsections state in relevant part:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

> .    .    .    .    .

> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

> .    .    .    .    .

> (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute  .   .   ..

■ The "substantial evidence" requirement of section 706(2)(E) is to be applied after a review of the record as a whole. See, *e. g., International Organization of Masters, etc. v. N.L.R.B.,* 575 F.2d 896, 902 (D.C.Cir.1978). The quantum of evidence required is such as would " 'justify, if the

trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' " *Consolo v. Federal Maritime Commission,* 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966).[4]

■ Despite the narrow scope of review under this standard and the breadth of discretion to be afforded the ICC in administering the Interstate Commerce Act, the record in the instant case falls short of supporting the grant to Grover of authority to transport wallboard from Empire, Nevada, to Idaho, Oregon, and Washington.

As a starting point, it is undisputed that no evidence whatsoever was introduced to support a grant of outbound authority from Empire, Nevada. This alone would not require setting aside the agency's action, however, if it could be established that other evidence did appear from which a public convenience or necessity could be inferred. Under the so-called "inferred evidence" rule, as set out by the court in *American Trucking Associations, Inc. v. United States,* 373 F.Supp. 252, 256 (W.D.Tex.1973), an applicant need not demonstrate a public convenience and necessity for each and every point for which authority is sought; rather, "[a] showing of need at numerous representative points raises a rebuttable presumption of a requirement for extended service at those points for which testimony is not available."

The facts in the instant case also fail to demonstrate any generalized need for outbound service of wallboard products from Nevada from which a "rebuttable presumption" of such need in Empire may be made. As the record illustrates, the only need demonstrated was the testimony of the Flintkote representative, who indicated a need for service from Blue Diamond. Blue

---

4. The "arbitrary, capricious  .  .  .  abuse of discretion, or otherwise not in accordance with law" standard of section 706(2)(A) is generally a more deferential standard than the substantial evidence test, although in some circumstances an agency decision supported by substantial evidence may nonetheless be arbitrary or capricious. *Universal Camera Corp. v. N. L. R. B.,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456

(1951). Mr. Justice Douglas discussed the scope of review under the "arbitrary and capricious" standard in *Bowman Transportation Co. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 285–86, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974). *Bowman,* like the present case, was a judicial review of I.C.C. action. In light of our conclusion on the substantial evidence issue, we do not reach this question.

Diamond is several hundred miles from Empire. There was therefore no basis upon which the Commission could infer that a need for service from Blue Diamond gives rise to a presumption of need for service from Empire. Furthermore, even if such a presumption had been raised, it would sufficiently have been rebutted by Packer's evidence that the needs of Empire were adequately served by the carriers already authorized to do business there.

Nor is this a case in which the would-be customers of the applicant demonstrated some need for flexibility in the transportation of its goods. Cf. *Tri-State Motor Transit Co. v. United States*, 570 F.2d 773, 778 (8th Cir. 1978). No shipper, Flintkote included, requested service other than from Clark County, nor did any indicate that future expansions of business would require additional service. There was therefore no evidence from which the Commission could infer that a public convenience and necessity existed for the issuance of authority to ship wallboard from all points in Nevada to the Northwest.

The government finally attempts to justify the authority granted by relying upon a recognized policy in favor of two-way authority.[5] Since adequate evidence established a need for inbound service to all points in Nevada, the Commission argues, this policy supports a similar grant of authority for outbound service. Even assuming such a policy, however, we are persuaded that it cannot support the grant of authority in this case.

■ The government here attempts to make not one but two inferences: first, the inference that there was indeed a need for inbound authority to Empire; second, that operating economies are such that this inbound service should be accompanied by outbound service. The government furthermore asks us to make these inferences in the face of uncontradicted testimony that Packer, an existing carrier, would be damaged by a grant of Empire authority to Grover, despite the Commission's own guidelines, which require the Commission to consider, among other factors, whether the proposed service would, contrary to public interest, endanger or impair the operations of existing carriers.[6] We would be remiss in our statutory duties if we permitted the Commission to make these inferences on a record supporting only inbound service, and supporting inbound service only to points other than that for which the exception is sought, especially where it is uncontroverted, that such an expansion might defeat the economical operation of an existing carrier.

5. Support in the case law for such a proposition is not as widespread as the Commission would have us believe. The Commission relies upon *American Trucking Associations, Inc. v. United States*, 355 U.S. 141, 154, 78 S.Ct. 165, 2 L.Ed.2d 158 (1957), and *Aero-Mayflower Transit Co. v. United States*, 95 F.Supp. 258, 262 (D.Neb.1951). While *Aero-Mayflower* indeed permitted the Commission to conclude, "[c]onsidering all the evidence with due regard to the public interest," that return authority was supported by public convenience and necessity, *American Trucking* merely noted that the Commission may observe economic realities.

The Commission also refers us to its General Policy Statement Concerning Motor Carrier Licensing Procedures (Operation Feasibility) dated November 15, 1973, published at 38 Fed. Reg. 32856. The first paragraph of that statement declares a policy in favor of two-way operations as being more economical, and states that such a policy is mandated by the National Transportation Policy stated in 49 U.S.C. Preceding § 1. The statement goes on to state that the Commission has adopted a policy of requiring carriers to present evidence showing how their equipment will be returned to the point of origin.

It does not appear that the two-way policy has been either attacked or endorsed by the courts that have reviewed I.C.C. orders, and while this court has no quarrel with the principles enunciated therein, we do not decide whether the policy contained in the above-cited Statement warrants judicial approval. We merely decide that the two-way policy cannot support the authority granted in the circumstances of this case.

6. The factors enumerated in *Pan-American Bus Lines Operation*, 1 M.C.C. 190, 203 (1937), are: (1) whether the new operation or service will serve a useful public purpose, responsive to a public demand or need; (2) whether this purpose can and will be served as well by existing lines or carriers; and (3) whether it can be served by applicant with the new operation or service without endangering or impairing the operations of existing carriers contrary to the public interest.

896

The Interstate Commerce Act states that an application for authority "shall be denied" where the request is not required by the present or future public convenience and necessity. Interstate Commerce Act § 207(a), 49 U.S.C. § 307(a). Congress has furthermore directed this court to "hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious . . . or otherwise not in accordance with law [or] (E) unsupported by substantial evidence . . ." 5 U.S.C. § 706(2)(A), (E). The court may ask of an order of the ICC that it be based "on substantial relevant evidence, fairly ascertained, and [that there be] no clear error of judgment." *Cross-Sound Ferry Services, Inc. v. United States,* 573 F.2d 725, 730 (2d Cir. 1978). The present record does not contain substantial evidence from which the inferences sought by the government can be drawn, and accordingly we are required to set aside the agency's grant of authority to Grover to the extent that it permits Grover authority to transport wallboard outbound from Empire, Nevada.[7]

As a final matter, the Commission had initially noted that it was denying Packer's request to exclude Empire because of a general policy against "atomization." The record is devoid of any finding of facts upon which such a policy has been determined applicable to the facts of this case, nor, indeed, have we been directed to any source of or rationale for such a policy. To the contrary, it appears that the Commission would have violated such a policy by the very certificate issued in this case when it excluded certain cities in Oregon and Montana from the authority granted for outbound service to Oklahoma and Texas.[8]

The petition for review of a final order of the Interstate Commerce Commission is granted, and the order is vacated to the extent that it grants authority to Grover Trucking Co. to transport wallboard outbound from Empire, Nevada.

---

**7.** While this conclusion may appear to place in doubt certain other authority granted to Grover at the same time, other agency actions are not in dispute here, and we offer no opinion on their validity.