**ST. ELIZABETH COMMUNITY HOSPITAL, Plaintiff-Appellant,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellee.**

**Nos. 82–4658, 83–2282.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 13, 1984.

Decided Oct. 19, 1984.

---

Cary Adams, Memel, Jacobs, Pierno & Gersh, Sacramento, Cal., for plaintiff-appellant.

Michael Power, Jerry J. Bassett, Asst. Regional Atty., Sacramento, Cal., for defendant-appellee.

Before PHILLIPS,* Senior Circuit Judge, and FLETCHER and REINHARDT, Circuit Judges.

* The Honorable Harry Phillips, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

PHILLIPS, Senior Circuit Judge:

This is an action for judicial review of a final decision of the Secretary of Health and Human Services that plaintiff, St. Elizabeth Community Hospital, does not qualify for a "sole community provider" exemption from the Medicare cost limits for cost years 1977 and 1978. The district court affirmed the final decision of the Secretary. Plaintiff appeals. We reverse.

I

A

In 1965 Congress enacted Public Law 89–97, 79 Stat. 291, Title XVIII of which has become known as the "Medicare Act." 42 U.S.C. § 1395 et seq. Under this statute and applicable regulations promulgated pursuant thereto, the Medicare program reimburses providers of hospital care the "reasonable cost" of such care as determined by the Secretary of the Department of Health and Human Services. 42 U.S.C. § 1395x(v)(1)(A) (1982).

Amendments in 1972 to the Medicare statutes recognized that in smaller communities where only one hospital exists to provide needed care, program beneficiaries in fact may have no reasonable choice between a non-existent "non-luxury" hospital where Medicare would pay all of the beneficiaries' expenses and those existing in the community whose charges and services may be deemed "first-class." H.R.Rep. No. 92–231, *reprinted in* 1972 U.S.Code Cong. & Ad.News 4989, 5070. The House Report further noted "that the provision [setting limits on cost] will not be applicable where there is only one hospital in a community—that is, where, if the provision were applied, additional charges could be imposed on beneficiaries who have no real

opportunity to use a less expensive, non-luxury institution, and where the provision would be difficult to apply because comparative cost data for the area are lacking." *Id.*

In response to the 1972 amendments, the Secretary promulgated regulations to exempt "sole community providers" from limitations on cost reimbursement.[1]

In administering the Medicare Program the Government operates through fiscal intermediaries, as authorized by 42 U.S.C. § 1395h(a). The intermediaries are private organizations which operate under contracts with the Secretary of Health and Human Services. The intermediary performs many functions for the Secretary such as reviewing cost reports of providers, and setting of "reasonable costs" figures. Blue Cross of Northern California is the intermediary in this case.

Decisions of an intermediary may be appealed by a provider to the Provider Reimbursement Review Board (PRRB), a five member board knowledgeable in the field of cost reimbursement. 42 U.S.C. § 1395 oo(h). In seeking an exemption as a "sole community provider" the provider must demonstrate that it qualifies for such an exemption. 42 C.F.R. § 405.460. A decision of the PRRB must be based upon the records made at a hearing, and is to be supported by substantial evidence on the record taken as a whole. 42 U.S.C. § 1395oo(d). The decision of the PRRB is a final order, appealable by the provider to the United States District Court, unless the Secretary intervenes on her own motion. 42 U.S.C. § 1395oo (f)(1). The Secretary of HHS has delegated her own motion review function to the Administrator of the Health Care Financing Administration, who has delegated the task to the Deputy Adminis-

---

1. 42 C.F.R. § 405.460(f)(4) (1978), in effect during the cost years at issue, provides:

    (f) *Exceptions, exemptions, and adjustments.* The following types of exceptions, exemptions, and classification adjustments may be granted under this section but only upon the provider's demonstration that the conditions indicated are present:

    .    .    .    .    .

    (4) *Exemption as sole community provider.* The limitation on costs imposed under this section shall not be applicable where a provider by reason of factors such as isolated location or absence of other providers of the same type, is the sole source of. such care reasonably available to beneficiaries.

    (Note: This sole community provider exception is now at 42 C.F.R. § 405.460(e)(1) (1983)).

trator. A decision of the Deputy Administrator who has exercised his own motion review constitutes the final administrative decision of the Secretary of HHS, and is subject to judicial review. 42 U.S.C. § 1395oo (f)(1).[2]

### B

St. Elizabeth Community Hospital, (Provider) is a general acute-care non-profit hospital located in the community of Red Bluff, Tehama County, California, population 8,850. St. Elizabeth's is the only hospital in the community. The cost years at issue in this case are the Provider's cost reporting periods ending June 30, 1977, and June 30, 1978. St. Elizabeth's had 68 licensed beds until March 1978 when it moved to a newly-constructed 45 bed facility.

The hospital's fiscal intermediary applied the Medicare program limits to the hospital and thereby reduced Medicare reimbursements by $35,543 for year 1977 and $65,624 for year 1978. On June 29, 1979 the hospital requested an exemption from the Medicare routine services cost limitation as a "sole community provider." The fiscal intermediary wrote to the San Francisco Regional office of the Medicare Bureau that the Provider qualified as a "sole community provider."[3]

The Regional Office of the Health Care Financing Administration (HCFA) instructed the fiscal intermediary to examine the extent to which Tehama County residents were admitted to hospitals other than St. Elizabeth's. After examining the additional information the fiscal intermediary denied St. Elizabeth's "sole community provider" exemption application.

The hospital appealed the intermediary's decision to the Provider Reimbursement Review Board. The PRRB conducted a hearing and considered evidence presented by both parties. The five member board unanimously concluded St. Elizabeth's was entitled to the sole community provider exemption. The Board stated:

> The evidence clearly establishes that the Provider draws the majority of its patients (in excess of 80 percent) from within a 10-mile radius of the Provider; and, therefore, that should be considered the Provider's service area, not Tehema County as argued by the Intermediary. Moreover, the evidence shows that the Intermediary relied upon the fact that hospitals outside the service area received 44% of their Medicare admissions from residents of the service area as a basis to deny the Provider's request for an exemption as a sole community provider. The Board finds that the Intermediary's reliance on the admissions statistics outside the Provider's service area (10-mile radius) is not correct. Finally, the Board notes that the majority of Medicare admissions to other facilities in Tehema County by residents of the Provider's service area were to obtain medical procedures not available at the Provider. Therefore, based upon the above factors, the Board concludes that the Provider is entitled to an exemption as a sole community provider.

The fiscal intermediary, Blue Cross, requested the Administrator of HCFA to conduct his "own motion" review of the decision of the PRRB. On February 9, 1981 an Attorney-Advisor with HCFA notified St.

---

**2.** The final decision of the Deputy Administrator is the final decision of the Secretary, the defendant in this case, and will be referred to as the "Secretary's decision" throughout this opinion.

**3.** The letter stated that the reasons for the recommendation were: (1) that the hospital is located in a non-standard Metropolitan Statistical Area; (2) that no public bus lines are available, although two private taxi companies did operate between Red Bluff and Corning, the nearest like hospital to Red Bluff; (3) that two thirds of the population of Tehama County resided within a

five-mile radius of Red Bluff; (4) the nearest like general acute care hospital located within a 25 mile radius is Corning Memorial, however, St. Elizabeth serves primarily the Red Bluff area with at least 85% of its patients from Red Bluff and patients within the 25 mile radius; (5) all active physicians of St. Elizabeth Community Hospital do not admit patients to Corning; and (6) the relative services costs for fiscal year ending June 30, 1977 and 1978 have exceeded routine service cost limitations.

Elizabeth's that the PRRB decision was to be reviewed by the Administrator. Both Blue Cross and St. Elizabeth submitted comments to the Administrator regarding the PRRB decision. On March 11, 1981 the Administrator issued the final agency decision and reversed the PRRB. The Administrator concluded that "[b]ased on the evidence of record, the Provider is not entitled to the sole community hospital exemption for limitations on coverage of costs for the permit at issue." It concluded the PRRB's decision was not supported by substantial evidence. This decision became the final Administrative decision of the Secretary of Health and Human Services.

St. Elizabeth's then filed for judicial review of the Secretary's decision in the United States District Court for the Eastern District of California, pursuant to 42 U.S.C. § 1395oo (f)(1). The parties filed cross-motions for summary judgment. District Judge Wilkins referred the case to a magistrate. The magistrate issued proposed findings and recommendations. The magistrate concluded the final agency decision was based on substantial evidence and recommended that defendant's motion for summary judgment be granted, and that plaintiff's motion be denied. On September 9, 1982, after receiving objections to the recommendation, the district judge accepted the magistrate's Proposed Findings and Recommendations *in toto* and issued an order granting defendant's motion for summary judgment and denying plaintiff's.

On November 5, 1982 St. Elizabeth filed a notice of appeal from the grant of motion for summary judgment. That appeal was docketed in this Court as Case No. 82–4658. However, on November 15, 1982 St. Elizabeth returned to the district court and filed a motion for relief from judgment pursuant to Fed.R.Civ.P. 60(b). The parties agreed the appeal would have to be remanded in order to vest the district court with jurisdiction to rule on the 60(b) motion. Before stipulating to the remand, the parties asked the district court, pursuant to the procedure recognized by this Court in *Crateo, Inc. v. Intermark, Inc.*, 536 F.2d 862 (9th Cir.) *cert. denied*, 429 U.S. 896, 97 S.Ct.

259, 50 L.Ed.2d 180 (1976), whether it would consider a rule 60(b) motion if the case were remanded. The district court indicated it would do so, and on February 23, 1983 this Court remanded the appeal to the district court.

The district court denied the Rule 60(b) motion on the merits and on August 12, 1983 St. Elizabeth filed appeal No. 83–2282. St. Elizabeth then filed its opening brief challenging the district court's summary judgment order. The Secretary sought to have the brief stricken arguing that the jurisdiction of this Court was limited to review of the denial of the Rule 60(b) motion, and not review of the summary judgment.

On March 20, 1984 this Court denied the Secretary's motion to strike and reinstated appeal No. 82–4658 (the original appeal from the summary judgment) and consolidated it with 83–2282, the appeal from the district court's denial of the Rule 60(b) motion. Both appeals are now before this Court. However, in its brief to this Court appellant makes no contention that the district court abused its discretion in denying its motion to alter or amend judgment pursuant to Fed.R.Civ.P. 60(b). Accordingly, we consider only the Administrator's decision that St. Elizabeth is not entitled to a sole community provider exception to Medicare cost limitations for cost years 1977 and 1978.

## II

Initially we address the appropriate standard of review in this case.

The scope of judicial review of a Secretary's decision regarding a determination of the Provider Reimbursement Review Board is governed by 5 U.S.C. § 706(2)(A), (E) (1976). *Sun Towers, Inc. v. Heckler*, 725 F.2d 315, 325 (5th Cir.1984); *Villa View Community Hosp., Inc. v. Heckler*, 720 F.2d 1086, 1090 (9th Cir.1983). Under 5 U.S.C. § 706(2), this Court's review is limited to determining whether the agency action was arbitrary, capricious, an abuse of discretion, not in accordance with

law or unsupported by substantial evidence on the record taken as a whole. *Villa View*, 720 F.2d at 1090; *North Clackamas Community Hospital v. Harris*, 664 F.2d 701, 704 (9th Cir.1980); *Mercy Hospital & Medical Center, San Diego v. Harris*, 625 F.2d 905, 907 (9th Cir.1980). Deference is accorded the Secretary's interpretation of his own regulations where he has expertise in the substantive area involved and where the regulations were promulgated pursuant to congressional authorization. *White Memorial Medical Center v. Schweiker*, 640 F.2d 1126, 1129 (9th Cir.1981). *See also Villa View*, 720 F.2d at 1090; *Pacific Coast Medical Enterprises v. Harris*, 633 F.2d 123, 130 (9th Cir.1980). Deference, however, does not mean we abdicate our responsibility to review agency action under the regulations promulgated. As this Court has noted, we must "examine the interpretation itself in light of the language of the regulations. The words must be reasonably susceptible to the construction placed upon them by the Secretary, both on their face and in light of their prior interpretation and application. *The interpretation must sensibly conform to the purpose and wording of the regulations.*" *Pacific Coast*, 633 F.2d 123, 131 (9th Cir. 1980) (citations omitted) (emphasis added). *Accord Villa View*, 720 F.2d at 1090 (*quoting Pacific Coast*).

■ Likewise, we examine the Secretary's decision to ascertain whether it was based on "substantial evidence." 5 U.S.C. § 706. Under the substantial evidence standard of review, we must affirm a finding where there is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' " *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 619–20, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938), even if it is possible to draw two inconsistent conclu-

sions from the evidence. *Illinois Central Railroad Co. v. Norfolk & Western Railway Co.*, 385 U.S. 57, 69, 87 S.Ct. 255, 262, 17 L.Ed.2d 162 (1966). We are not confined, however, to those portions of the record which the secretary cites in support of her conclusions; we will review the record as a whole, *Packer Transportation Co. v. United States*, 596 F.2d 891, 894 (9th Cir.1979), and take into account whatever in the record clearly detracts from the weight of the evidence, *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951).[4]

### III

■ We turn then to the question of whether the Secretary's denial of a "sole community provider" exemption under 42 C.F.R. § 405.460 is arbitrary, capricious, an abuse of discretion, not in accordance with the law, or unsupported by substantial evidence on the record taken as a whole. As set forth below, we conclude that the Secretary's application of the regulations was arbitrary and capricious and reverse the decision of the district court which affirmed the Secretary. *See Villa View Community Hosp., Inc. v. Heckler*, 720 F.2d 1086, 1090, fn. 10.

42 C.F.R. § 405.460(f)(4) provides that exemptions from the cost limits under that section may be granted to a sole community hospital "which by reason of factors such as isolated location or absence of other hospitals is the sole source of such care reasonably available to beneficiaries." In 1978 the Health Care Financing Administration (HCFA) issued an intermediary letter I.L. 78–17 setting forth basic guidelines to the intermediaries for making the sole community provider determination. The letter explained:

> [T]he purpose of this provision [sole community provider exemption] is to exempt from the cost limits published pursuant

---

**4.** Appellant seems to suggest we should review the decision of the PRRB and if we conclude that there is substantial evidence on the record to support that decision, then we must reverse the decision of the Secretary. Appellant is in-

correct. As noted, it may be possible to find substantial evidence to support two inconsistent conclusions. It is the *final* decision of the Secretary that we review. *See Sun Towers, Inc. v. Heckler*, 725 F.2d 315, 326 (5th Cir.1984).

to regulations section 405.460 those hospitals, which are, by virtue of their isolated location and the isolation of their service area, viz a viz other like facilities, the only source of hospital care reasonably available to Medicare beneficiaries residing in their service area. Application of limits to such a hospital could result ... in the hospital imposing a charge ... on its Medicare patients to recover the difference between the limits and the hospitals' costs attributable to the care of these beneficiaries, and these beneficiaries would have no reasonable recourse to other hospital facilities.

Thus, the directive recognized that perhaps the primary purpose of the exemption was to protect the Medicare recipient, i.e. to ensure that hospitals could be reimbursed for their reasonable expenses by the Medicare program, even if the expenses were higher than the general limits because of special circumstances, so that hospitals would not exact the costs from the individual Medicare recipient.

Intermediary Letter 78–17 continued:

Therefore physical isolation of the hospital and its service area, as demonstrated by the absence of reasonably accessible like facilities, or isolation of the hospital and its service area due to unusual local circumstances which results in general nonuse of the otherwise closest like facilities by residents in the hospital's service area is the key factor to a determination that a hospital is an SCP within the meaning of regulations Section 405.-460(f)(4). Examples of unusual local circumstances include, but are not limited to, adverse topographical conditions, extended periods of adverse weather conditions, and *hospital admitting patterns of physicians in practice in the hospital's service area.*

The intent of the program instructions on processing requests for an SCP exemption (pages 4 and 5 of IL 74–22) was to explain that an indication as to whether the hospital is so isolated is whether the hospital is located both in a non-SMSA and outside the 25 mile radius of a like facility. However, for such a hospital to

be granted an SCP exemption, the intermediary must also determine that the hospital is so isolated as to be the sole source of regular hospital services reasonably available to Medicare beneficiaries residing in the hospital's service area. To assist the intermediary to decide whether the hospital meets this most basic criterion, IL 74–22 identified certain factors which, in addition to other appropriate factors, if verified by the intermediary, should have enabled the intermediary to reach a considered determination as to whether the hospital is entitled to an SCP exemption. These are (1) the extent to which and reasons why residents of the hospital's service area obtain, from the nearest like facilities, the type of hospital services available to them from the requesting hospital, and (2) the case and manner, as judged by local standards, with which these residents use these like facilities. Intermediary corroboration and evaluation of these factors should enable the intermediary to determine whether the hospital and its service area are sufficiently isolated as to support a finding that the hospital is the sole source of regular hospital care reasonably available to the Medicare beneficiaries residing in its service area.

The HCFA set forth additional criteria to use in determining whether a hospital qualifies for this exemption: type and size of the hospital; geographic boundary of the hospital's service area; the population of the service area and the general distribution of this population throughout the service area; the hospital admitting patterns of physicians in practice in the hospital's service area, i.e. to what extent do those physicians in practice admit patients to the nearest like facilities; and the identity, location and size of the nearest like facilities located in or with service areas adjacent to the hospital's service area.

The Secretary recognized in her decision that 42 C.F.R. § 405.460(f)(4) considers unusual local circumstances in determining sole community provider status. Drawing from Intermediary Letter 78–17, the Secre-

tary's decision notes "[e]xamples of unusual local circumstances include, but are not limited to, adverse topographical conditions and extended periods of adverse weather conditions." The Secretary concluded St. Elizabeth is not located in an area with extended periods of adverse weather or adverse topographical conditions. The parties do not dispute this finding. What is telling about the Secretary's decision is her selective exclusion of the third "unusual local circumstance" articulated in I.L. 78–17 along with the two addressed. The third circumstance was "hospital admitting patterns of physicians in practice in the hospital's service area."

St. Elizabeth introduced by affidavits the testimony of the fourteen practicing physicians in Red Bluff. These affidavits, and the actual testimony by one of the doctors, clearly demonstrated that, with one minor exception, all patients of these Red Bluff doctors who needed care at St. Elizabeth were in fact admitted there and nowhere else, and that patients were only admitted elsewhere when they needed services not available at St. Elizabeth.

We conclude that these physician admitting practices are a compelling, perhaps overriding, factor in this case. The Seventh Circuit recently decided that it is "critical" to consider the admitting practices of local physicians in the determination of sole community provider status. *Graham Hospital Association v. Heckler*, 739 F.2d 285 (7th Cir.1984). The Seventh Circuit determined that the hospital involved in that case was entitled to a sole community provider exemption largely because of the restrictive admitting practices of physicians, even though another hospital facility was located within 21 miles of the hospital seeking the exemption. We agree with the Seventh Circuit's analysis.

Yet, in the present case, the Secretary failed to attach any significance to the factor of physician admitting practices. The legislative history, the regulations and I.L. 78–17 clearly demonstrate that a major policy behind the sole community provider exemption was to ensure that the cost limits will not be applicable where additional charges could be imposed on beneficiaries who have no real opportunity to use alternative facilities. Such reasonable alternatives essentially were not available to the Medicare patients in the Red Bluff area as a result of the admitting practices of the local physicians. Therefore, we conclude the Secretary's interpretation of the sole community provider exemption under the facts presented in this case was arbitrary and did not "sensibly conform to the purpose and wording of the regulations." *Pacific Coast Medical Enterprises v. Harris*, 633 F.2d 123, 131 (9th Cir.1980).

There is much dispute in the record, the agency decisions, and the briefs to this Court, over what is the service area of St. Elizabeth Hospital. The answer to that question is important in that there are repeated references in the regulations and the intermediary letter to "service area" as the basis for measuring or evaluating the variety of factors used in determining whether a hospital qualifies for an exemption. There is, unfortunately, a notable absence of regulatory guidance on how one determines what a particular hospital's service area is. St. Elizabeth contends its service area should be a ten-mile radius of the hospital. It bases this contention on evidence from two studies, one done in 1975 and one in 1979 during the pendency of its application, which show that over 80 percent of its patients come from within a ten-mile radius of the hospital. The PRRB also concluded the 10-mile radius was the proper service area. The Secretary, and the fiscal intermediary argued that the service area of St. Elizabeth is the entire Tehama County. St. Elizabeth concedes that if the service area is the entire county, it is not entitled to a sole community provider exemption. The Secretary also made some reference to a 20-mile radius as possibly the service area. St. Elizabeth argues that if this figure is used and the physician admitting patterns are taken into account, it would still qualify for an exemption. The Secretary contends that even under the 20-mile test, the decision is correct because Corning Hospital, eighteen miles away, is a

reasonably available alternative to St. Elizabeth.

Plaintiff argues, with some support, that most of those who did utilize other hospitals fell into three basic categories: (a) those persons who sought services unavailable at St. Elizabeth; (b) those in the Corning area that utilized the Corning district hospital; and (c) those who lived in parts of the county some distance from Red Bluff where other hospitals, not in the county, actually may have been closer.

We can find no support in the record for the Secretary's contention that the service area should be all of Tehama County. Therefore, we reject it as arbitrary. Indeed, the Secretary's final decision never clearly articulated what she concluded the St. Elizabeth service area to be, although she rejected the ten-mile limit adopted by the PRRB. The Secretary concluded only that Corning Hospital was "another hospital reasonably available to Medicare beneficiaries in the Provider's service area...." This ignores, however, the fact that all of the Medicare beneficiaries in the Red Bluff area were limited in their hospital choice by the physician admitting practices in that community. These doctors did not admit to Corning Hospital. Thus, to these persons, Corning Hospital was not a realistic alternative.

The ten-mile radius service area found by the PRRB, on the other hand, does have some rational support in the record. Whether we accept this as the service area, or accept the alternative 20-mile radius, plaintiff is entitled to a sole community provider exemption when proper consideration is given to physician admitting practices.

### IV

Plaintiff is entitled to a sole community provider exemption. Accordingly, the decision of the district court is reversed. This case is remanded to the district court with directions to remand to the Secretary for further action not inconsistent with this opinion.

REVERSED AND REMANDED.