600 F.2d 999
 195 U.S.App.D.C. 185
 GREYHOUND LINES, INC., Petitioner,
v.
The UNITED STATES of America and the Interstate Commerce
Commission, Respondents,
Tamiami Trail Tours, Inc., et al., Latin Express Service,
Inc., Intervenors.
 No. 78-1206.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued April 2, 1979.
Decided June 15, 1979.
 
 L. C. Major, Jr., Alexandria, Va., with whom William F. King, Jeffrey A. Vogelman and Russell R. Sage, Alexandria, Va., were on the brief, for petitioner.
 Kathleen M. Dollar, Atty., I. C. C., Washington, D. C., with whom Mark L. Evans, Gen. Counsel, I. C. C., Henri F. Rush, Associate Gen. Counsel, I. C. C., and Robert L. Thompson, Atty., Dept. of Justice, Washington, D. C., were on the brief, for respondents.
 Edward G. Villalon and Lawrence E. Lindeman, Washington, D. C., were on the brief, for Intervenor, Tamiami Trail Tours, Inc., et al.
 Richard B. Austin and John P. Bond, Miami, Fla., were on the brief, for Intervenor, Latin Express Service, Inc.
 Before McGOWAN and WILKEY, Circuit Judges, and CORCORAN,* United States Senior District Judge for the United States District Court for the District of Columbia.
 Opinion Per Curiam.
 
 PER CURIAM:
 
 1
 By application filed with the Interstate Commerce Commission (ICC) on August 5, 1974, Latin Express, a new corporation, sought authority to operate as a common carrier transporting passengers and their baggage between Miami, Florida and Union City, New Jersey. The proposed service was designed primarily to accommodate Spanish-speaking passengers by providing teams of two bi-lingual drivers who would both drive and serve as hosts for the passengers. Latin Express planned an initial schedule of two round trips per week, and eventually hoped to operate one daily round trip.
 
 
 2
 Latin Express was unable to submit complete financial data to establish its fiscal fitness because it had not yet conducted any business. It showed assets of only $1,000 in cash in addition to pledges by its only stockholders (its president Mr. Dingee and his wife) of their personal assets totalling $162,600. This sum included cash on hand of $92,000 and a total net worth of $159,890.
 
 
 3
 Opposed by petitioner Greyhound Lines, Inc., and intervenor members of the National Trailways System, this application was supported by eight Spanish-speaking witnesses individuals who had travelled or who intended to travel between Miami and New York City. After experiencing difficulties in using existing bus services, some of them were afraid to travel again by bus, and believed that applicant's service was "needed." All of them agreed, however, that the service proposed by Latin Express would be a great convenience and would be utilized.
 
 
 4
 After the Administrative Law Judge issued an initial decision granting the application, exceptions were filed and Division 1 of the Commission denied the application by decision of April 19, 1977. Latin Express Service, Inc., Common Carrier Application, 126 M.C.C. 580 (1977). Latin Express then filed a petition for reconsideration, which was granted by a newly-constituted Division 1.
 
 
 5
 Subsequently, Greyhound filed both a petition with the full Commission for recall of the proceedings, and a petition for their reopening. The latter petition requested consideration of new evidence regarding (1) Latin Express's alleged threat of an antitrust suit if Greyhound continued to oppose the application, and (2) applicant's request to Greyhound to invest in or loan it money to ensure its successful operation.
 
 
 6
 On January 24, 1978, the entire ICC, having granted Greyhound's recall petition, reversed the earlier Division 1 decision and granted Latin Express's application. Latin Express Service, Inc., Common Carrier Application, 128 M.C.C. 740 (1978). The majority failed in its order to address Greyhound's petition to reopen the proceedings, however, despite the criticism of two dissenters. Id. at 749-51 (Murphy & Stafford, Commissioners, dissenting).
 
 
 7
 Greyhound then filed with the ICC a petition for stay of the order, and timely filed in this court a petition for its review. Ultimately, the ICC denied the stay petition but granted the petition to reopen the proceedings, finding, without investigation, that the allegations of Latin Express's improper conduct did not warrant reversal of the grant of authority. Latin Express Service, Inc., Common Carrier Application, No. MC-140094 (Mar. 17, 1978). This time, the two prior dissenters were joined by a third, all of whom criticized the majority for refusing to investigate Greyhound's allegations of applicant's misconduct. Id. at 2-3 (Murphy, Stafford & Clapp, Commissioners, dissenting). Petitioners now challenge both the Commission's order granting Latin Express's application, and its affirmation of that grant without an investigation of Greyhound's allegations.
 
 
 8
 In deciding whether new common carrier operating authority should be granted, the ICC determines whether (1) applicant's proposed service is responsive to a public need; (2) this need cannot be served as well by existing carriers; and (3) the new operation will not endanger or impair operations of existing carriers. Pan-American Bus Lines Operation, 1 M.C.C. 190, 203 (1936). The ICC found that the evidence supporting these criteria warranted the granting of the application, and although the evidence is perhaps only marginally sufficient, we nevertheless affirm the Commission's findings in these respects.[1]
 
 
 9
 The more significant issue involves the further requirement that Latin Express be "fit, willing and able" to provide the proposed transportation and comply with the Commission's regulations. 49 U.S.C.A. § 10922(a)(1) (1978). As indicated above, its financial resources are extremely limited. Moreover, it has neither equipment, nor prior experience in this industry, and it has left essentially unanswered several questions about the purchase and maintenance of buses and the availability of credit. On the other hand, the proposed initial operations will be limited to two round trips per week, which is arguably commensurate with Latin Express's limited funds.
 
 
 10
 These facts alone indicate that Latin Express has minimal capacity to perform the proposed service. When this information is viewed together with additional claims of the applicant's misconduct, however, serious questions appear as to whether Latin Express lacks not only financial fitness but ethical integrity as well.
 
 
 11
 Greyhound's allegations focus on a telephone call from Latin Express's counsel in which counsel allegedly attempted to coerce Greyhound to abandon its opposition to the application by threatening an antitrust action. Alternative schemes were suggested whereby Greyhound would either loan funds to Latin Express so that it could commence operations, or lease equipment to Latin Express for a nominal fee, in exchange for which Greyhound would be allowed to acquire an interest in Latin Express. Latin Express's counsel belatedly countered these allegations by broadly denying any threats of antitrust action. However, counsel did not even attempt to deny his suggestion that Greyhound explore the possibility of "legally permissible" financial investment in Latin Express in exchange for withdrawal of its opposition.
 
 
 12
 Faced with these serious and substantially unrefuted accusations implying applicant's inability to perform the proposed service, the Commission stuck its head in the sand. It belatedly granted Greyhound's petition to reopen the proceedings, but without benefit of investigation or hearing, found that
 
 
 13
 (t)he new evidence does not provide a basis for a finding that applicant is not fit. If the phone conversation is interpreted most strongly against applicant, the call amounts to an attempt to discourage further opposition to the application by threats of an antitrust action, or alternatively, by offering the protestant an opportunity to purchase part of applicant's stock. While these actions, if they occurred, should not be encouraged, they do not, standing alone, provide sufficient evidence that the applicant is not fit to hold the authority to provide the service at issue.
 
 
 14
 Latin Express Service, Inc., Common Carrier Application, No. MC-140094, at 1 (Mar. 17, 1978).
 
 
 15
 While we are not entitled to substitute our judgment for that of the ICC or correct Commission decisions with which we disagree, we need not remain silent when the Commission virtually ignores serious charges relevant to a central issue in the proceeding. Based on this record, the Commission should have questioned Latin Express's counsel about the phone conversation with Greyhound, and should have questioned both counsel and Latin Express's president about the company's financial arrangements.[2] Instead, the Commission acted on limited and unsubstantiated information, and consequently, failed to offer a thorough and reasoned explanation for its order refusing to overturn its grant of the application.
 
 
 16
 Under these circumstances, we find that the Commission's decisions granting Latin Express's application and reaffirming the grant lack substantial evidentiary support.[3] We therefore remand the case for reconsideration of the issue of financial fitness after evidentiary exploration of the significance of Greyhound's allegations.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. § 294(a)
 
 
 [1]
 See Transportes Hispanos, Inc., Common Carrier Application, 117 M.C.C. 894, 895 (1973) (when existing service not meeting specific needs of Spanish-speaking travelers, and proposed service catering to such travelers not harmful to existing operations, support by fourteen public witnesses sufficient to justify grant of application). See also Elegante Tours, Inc. Broker Application, 113 M.C.C. 156, 160 (1971) (when distinctive service shown to fulfill demonstrated need, and existing carriers not providing adequate service to any segment of public, grant of authority to applicant not discriminatory, but provides needed service)
 
 
 [2]
 See Barnes Freight Line, Inc. v. ICC, 569 F.2d 912, 922-23 (5th Cir. 1978) (when faced with allegations of applicant's fraud, ICC should have investigated before issuing order reinstating both applicant's temporary authority and application for permanent authority)
 
 
 [3]
 See Bowman Transp. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 284, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974) (agency decision must be supported by substantial evidence and must not be arbitrary, capricious, or an abuse of discretion); United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 535-36, 66 S.Ct. 687, 90 L.Ed. 821 (ICC decisions must be sustained if warrant in law and fact for what Commission has done)