**P.A.K. TRANSPORT, INC., Petitioner,**

v.

**UNITED STATES of America, Respondent,**

**Interstate Commerce Commission, Intervenor, Respondent,**

**Currier Trucking Corporation, Intervenor.**

**No. 79–1188.**

United States Court of Appeals, First Circuit.

Argued Nov. 7, 1979.

Decided Jan. 23, 1980.

---

352

R. Peter Decato, Lebanon, Ohio, with whom, Decato & Cirone, P. A., Lebanon, Ohio, was on brief, for petitioner.

Robert Lewis Thompson, Atty., Dept. of Justice, Washington, D. C., with whom, John H. Shenefield, Asst. Atty. Gen. and John J. Powers, III, Atty., Dept. of Justice, Washington, D. C., were on brief, for respondent, United States of America.

Denise M. O'Brien, Atty., I.C.C., Washington, D. C., with whom, Robert S. Burk, Acting Gen. Counsel and Frederick W. Read, III, Associate Gen. Counsel, Washington, D. C., were on brief, for intervenor, respondent Interstate Commerce Commission.

Wesley S. Chused, Boston, Mass., with whom, Weiner & Chused, Boston, Mass., was on brief, for intervenor, Currier Trucking Corp.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, CLARKE,[*] District Judge.

CLARKE, District Judge.

P.A.K. Transport, Inc. (hereinafter "P.A.K."), a carrier subject to regulation by the Interstate Commerce Commission (ICC), was subjected to an ICC investigation commencing in March 1976. P.A.K. had certificates permitting it to haul junk, salvage, scrap, or waste materials from and to various points in New England and New Jersey. P.A.K. had hauled scrap slabs, edgings, and cuttings from sawmills in New England for many years pursuant to its ICC certificate authority. About 1970 a machine was developed which enabled sawmills to make wood chips of the slabs. From 1970 to 1976, P.A.K. hauled the wood chips as scrap from the sawmills to the paper mills. The ICC investigation was to determine if wood chips qualified as scrap under P.A.K. authority.

An administrative law judge ruled chips were scrap. Exceptions were filed by a competing carrier and a three-member panel of the Commission reversed the administrative law judge's decision but *sua sponte* stayed its own cease and desist order pending an invited filing of an application by P.A.K. for a permanent license which would encompass the chips. P.A.K. did not appeal this reversal of the administrative law judge's decision, but it did file the suggested application.

An ICC employee board granted the application in part but restricted it to service of four shippers in New Hampshire who had supported P.A.K.'s application. A review of the ICC employee board decision was taken on a petition for reconsideration. A split Commission panel (Division 2), with one dissenter, issued a terse, standardized-form, one-page decision on March 14, 1979, denying reconsideration of the employee board's restriction of P.A.K.'s operating authority for transporting wood chips to four customers. The Commission did not state precisely what evidence it reviewed or what law it applied. Rather, it merely denied reconsideration "because the findings of Review Board Number 2 are in accordance with the evidence and the applicable law.", P.A.K. appeals.

The sole issue on appeal is whether the Commission, in partially denying P.A.K.'s application for a motor carrier certificate with respect to an extension of its operating authority, properly applied legal standards and properly balanced the various competing interests.[1]

I.

■ We recognize that the Commission has broad discretion in making its motor

---

[*] Of the Eastern District of Virginia, sitting by designation.

1. At oral argument, P.A.K. conceded that its petition was untimely to the extent that it sought judicial review of the Commission's order in the investigation proceeding which resulted in the finding that wood chips did not qualify as scrap material under P.A.K.'s operating authority. Both the United States and the Commission agreed that the petition was untimely because the final order in the investigation proceeding was entered by the Commission on January 27, 1978, when the agency denied the petition for reconsideration of its November 7, 1977, decision. A timely petition for review of that decision should have been filed within 60 days. *See* 28 U.S.C. § 2344. P.A.K.'s petition for review by this Court was filed more than one year following the final Commission decision. The United States and the Commission stated that this was a jurisdictional defect which could not be overcome. *See Chem-Haulers, Inc. v. United States*, 536 F.2d 610, 613–14 (5th Cir. 1976).

Since all parties agree that the petition seeking review of the investigation proceeding was untimely, the Court need not consider this issue further.

carrier licensing decisions. *See Appleyard's Motor Transportation Co. v. ICC*, 592 F.2d 8, 9–10 (1st Cir. 1979). That discretion is bounded, however, by the requirements that the Commission properly follow statutory standards and consider all relevant factors. *See, e. g., Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962); *Schaffer Transportation Co. v. United States*, 355 U.S. 83, 87–92, 78 S.Ct. 173, 2 L.Ed.2d 117 (1957). One of the Commission's statutory duties in regard to granting a certificate for motor carrier service is to determine whether "the transportation to be provided under the certificate is or will be required by the present or future public convenience and necessity." 49 U.S.C. § 10922(a)(2). The Commission also is guided by the national transportation policy, which seeks to develop and preserve adequate and efficient service. *See* 49 U.S.C. § 10101.

Although these statutory standards are general, the Commission very early attempted to articulate certain criteria to be considered in licensing cases:

> [1] Whether the new operation or service will serve a useful public purpose, responsive to a public demand or need; [2] whether this purpose can and will be served as well by existing lines or carriers; and [3] whether the new operation or service proposed can be served by applicant without endangering or impairing the operations of existing carriers contrary to the public interest.

*Pan American Bus Lines Operation*, 1 M.C.C. 190, 203 (1936).

█ These *Pan American* criteria have been applied and emphasized to varying degrees, with no one factor controlling. The courts, however, do require the Commission to balance carefully the various competing interests in determining "whether the 'public convenience and necessity' would be served by the entry of new carriers into markets served by [existing carriers]," *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S.

281, 288, 293, 95 S.Ct. 438, 443, 42 L.Ed.2d 447, *rehearing denied*, 420 U.S. 956, 95 S.Ct. 1340, 43 L.Ed.2d 433 (1974); and, in light of the national transportation policy, to consider the inherent advantages of the proposed service in terms of the public benefits it might produce. *See, e. g., Schaffer Transportation Co. v. United States, supra*, 355 U.S. at 89–90, 78 S.Ct. 173; *Dixie Carriers, Inc. v. United States*, 351 U.S. 56, 76 S.Ct. 578, 100 L.Ed. 934 (1956). In particular, the Commission must consider the benefits from additional competition as well as the harm to existing carriers. *See e. g., Niedert Motor Service, Inc. v. United States*, 583 F.2d 954 (7th Cir. 1978); *Sawyer Transport, Inc. v. United States*, 565 F.2d 474 (7th Cir. 1977); *P. C. White Truck Line, Inc. v. ICC*, 179 U.S.App.D.C. 367, 551 F.2d 1326 (D.C.Cir.1977).

The difficulty in the present case is that the Commission has failed to make specific findings or to state its reasons for or the evidence relied upon in reaching its decision. Although it is a well-established tenet of administrative law that an agency is "presumed" to have properly performed all of its duties, *see, e. g., ICC v. City of Jersey City*, 322 U.S. 503, 512, 64 S.Ct. 1129, 88 L.Ed. 1420 (1944), the instant proceeding raises serious doubts as to whether the Commission did consider vital portions of P.A.K.'s evidence and whether it appropriately applied legal standards. Therefore, we find that based upon the record currently before the Court, the Commission's action in the P.A.K. licensing proceedings reflects an abuse of discretion,[2] and we remand the case to the Commission for further proceedings in accordance with this opinion.

## II.

█ Certainly P.A.K. is entitled to have the Commission consider all of its evidence, in particular a sixty-five page traffic abstract of shipments handled in the subject application territory between 1970 and

---

2. This position is taken not only by petitioner P.A.K. but also by the United States acting as

statutory respondent pursuant to 28 U.S.C. §§ 2322, 2344.

1978.[3] Such traffic abstract evidence has been considered by the Commission in other motor carrier certificate cases as giving rise to a "color of rights" claim on the issue of public convenience and necessity. *See, e. g., A. B. & C. Motor Transportation Co. v. United States*, 69 F.Supp. 166, 169 (D.Mass. 1946). While it remains within the Commission's discretion to assign the probative weight to any piece of evidence, it should at least consider this traffic abstract as evidence of operations by P.A.K. under color of right.

■ As we indicated earlier, inherent advantages to the public from the proposed service, including the possible advantage of increased competition, is an element which the courts have required the Commission to consider. *See, e. g., Schaffer Transportation Co. v. United States, supra; Niedert Motor Service, Inc. v. United States, supra; Sawyer Transport, Inc. v. United States, supra; P. C. White Truck Line, Inc. v. ICC, supra; Chem-Haulers, Inc. v. United States*, 536 F.2d 610 (5th Cir. 1976). The Commission erroneously failed to discuss, or even acknowledge, the advantages to the public which P.A.K.'s proposed service might produce, in particular whether the public would benefit from the increased competition. The Commission's complete disregard of this essential factor is inexcusable in a case where there may not be an abundance of qualified, responsive carriers in the market. *See Sawyer Transport, Inc. v. United States, supra*, 565 F.2d at 478.

■■ Finally, in considering the harm to the existing carriers, the Commission applied an improper standard of protecting the sole protesting carrier, Currier Truck-ing, against "possible" traffic diversion.[4] The appropriate standard is not whether the proposed service will divert traffic from a protesting carrier but whether that protestant shows through convincing, competent evidence that the new competition "is likely to materially jeopardize existing carriers' ability to serve the public." *Liberty Trucking Co.*, 130 M.C.C. 243, 246 (1978). Protestants must show more than an expected decline in revenues; rather, they must specifically show how their overall service to the public will be jeopardized. *See, e. g., Lemmon Transport Co.*, 131 M.C.C. 76, 80 (1979); *Smith's Transfer Corp.*, 131 M.C.C. 218, 222 (1978); *Latin Express Service, Inc.*, 128 M.C.C. 740, 746 (1978).

This Court has pointedly stated that those carriers initially in a market are not immune from additional competition in the face of a demonstrated public need:

> There is no question here of diversion, but, even if there were, "[N]o carrier is entitled to protection from competition in the continuance of a service that fails to meet a public need, nor, by the same token, should the public be deprived of a new and improved service because it may divert some traffic from other carriers." *Schaffer Transportation Co. v. United States, supra*, 355 U.S. at 91, 78 S.Ct. at 178. This principle was reiterated in *United States v. Dixie Highway Express, Inc.*, 389 U.S. 409, 411–12, 88 S.Ct. 539, 19 L.Ed.2d 639 (1967).

*Appleyard's Motor Transportation Co. v. ICC, supra*, 592 F.2d at 12.

■■ Furthermore, the Commission and the courts long have recognized that the

---

**3.** The employee board decision reflects that only the evidence of the four shippers supporting P.A.K.'s application and P.A.K.'s fitness, feasibility, operational, and financial data were considered. No mention or implied reference is made of the traffic abstract evidence, which demonstrated that P.A.K. had provided service since 1970 for other shippers and between many points in addition to those involving the four supporting shippers. Since the Commission relied upon the employee board's review of the evidence, the traffic abstract evidence was never considered.

**4.** The grant of P.A.K. authority was based on the following finding by the employee board: "It therefore appears that a grant (properly limiting service to those origins where shippers maintain plants) would not divert any traffic from protestant." ICC Decision No. MC–32948 (Sub-No. 22) at 2 (Oct. 5, 1978). The Commission adopted the findings of the employee board and, therefore, accepted this finding.

entry of a new carrier into a market ordinarily will cause diversions of traffic from existing patterns and, thus, existing carriers are often "harmed" in the literal sense. Additional competition frequently means a loss of customers for some existing carriers, but it does not necessarily follow that the public interest, on balance, will be harmed. *May Trucking Co. v. United States*, 193 U.S.App.D.C. 195, 202, 593 F.2d 1349, 1356 (D.C.Cir.1979); *Midwest Coast Transport, Inc. v. ICC*, 536 F.2d 256, 260 (8th Cir. 1976). As we noted in *Appleyard's Motor Transportation Co., supra*, "the important thing is the protection and promotion of the public interest, not that of the certified carriers." 592 F.2d at 11.

In summary, on remand the Commission is to consider all of P.A.K.'s evidence in support of its application, in particular the traffic abstract; to make findings which reflect that consideration was given to possible public benefits from P.A.K.'s proposed service, to include a consideration of possible benefits from increased competition; and to apply the proper evidentiary standard in evaluating harm to existing carriers.

*Remanded with instructions for further proceedings in accordance with this opinion.*