**CURTIS, INC., Petitioner,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents,**

**Midwest Emery Freight System, Inc., Intervenor-Petitioner.**

**79–2235.**

United States Court of Appeals, Tenth Circuit.

Submitted June 15, 1981.

Decided Jan. 29, 1982.

Richard A. Peterson and Lavern R. Holdeman of Peterson, Bowman & Johanns, Lincoln, Neb., for petitioner, Curtis, Inc.

Arnold L. Burke of Burke, Kerwin, Towle & Andrin, Chicago, Ill., for intervenor-petitioner Midwest Emery Freight System, Inc.

Sanford M. Litvack, Asst. Atty. Gen., and Robert B. Nicholson and Robert Lewis Thompson, Attys., Dept. of Justice, and Richard A. Allen, Gen. Counsel, James P. Tuite, Deputy Associate Gen. Counsel, and Denise M. O'Brien, Atty., I.C.C., Washington, D. C., for respondents.

Before SETH, Chief Judge, and LEWIS and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir. R. 10(e). The cause is therefore ordered submitted without oral argument.

Petitioner Curtis, Inc. and intervenor-petitioner Midwest Emery Freight System, Inc. (petitioners) seek review of a decision of the Interstate Commerce Commission

**650**

(ICC) granting authority to National Carriers, Inc. (NCI) to transport frozen foodstuffs as a common carrier from the facilities of Great American Basic Commodities, Inc. (shipper) to states in the east and midwest.[1] The application of NCI was filed September 26, 1977. The matter was initially heard before an Administrative Law Judge (ALJ) who granted the amended authority. This decision was affirmed by the Interstate Commerce Commission, Division I, with one commissioner dissenting. We affirm.

Great American Basic Commodities, Inc., the shipper supporting NCI's application, produces and distributes frozen food products for school lunch programs. These products are frozen immediately after assembly, and must remain frozen during storage and transport to the customer. The shipper testified that its storage capacity is limited, and that timely pickup is essential to avoid production shutdown resulting from its inability to store the finished product. The shipper also testified that it requires loading and shipping at specified times to coordinate delivery with the preplanned lunch menus of its customers, and that late deliveries jeopardize both contracts to supply lunches to school systems and performance bonds required to assure timely delivery. The shipper presented evidence that existing carriers were unwilling or unable to meet its needs and stated that it believed NCI could provide the reliable specialized service it required.

NCI presented evidence of its facilities, equipment, and financial fitness. It testified that it was willing and able to provide a specialized service responsive to the particular needs of the supporting shipper.

Petitioners appeared as protestants. Neither disputed the shipper's testimony that its needs were not being met by existing carriers nor challenged NCI's evidence as to its ability to fill the need. Petitioner's only concern was that the authority sought would allow NCI to interline shipments with other carriers at the shipper's plantsite.[2] The application as amended requested authority to pick up frozen foodstuffs at the shipper's facilities, but it did not limit the foodstuffs to those originating there. Petitioners testified that under this authority NCI could divert traffic from petitioners' operations by interlining with other carriers, and thereafter presented evidence of traffic subject to diversion.

Citing *Fox-Smythe Transportation Co.*, 106 M.C.C. 1, 17–18 (1967), the ALJ declined to restrict the authority to traffic originating at the facilities of the shipper because petitioners failed to show they would be materially and adversely affected by the grant of unrestricted authority. The ALJ stated that "applicant convincingly met its burden of proof and the burden shifted to protestants to show substantial injury resulting from an unrestricted grant of the application. See *P. C. White Truck Line, Inc. Ext.-Atlanta, Ga.*, 129 M.C.C. 1. This, protestant [*sic*] failed to do." Rec. at 446.

The ICC affirmed the decision of the ALJ and approved of his application and interpretation of *Fox-Smythe* and *P. C. White*:

"The mere introduction by protestants of revenues subject to diversion should the application be granted was found insufficient to show an interest worthy of protection, unless it is patently clear that the revenues amount to a significant percentage of a carrier's overall income. Protestants must show how the potential loss of such revenues would affect their operations. The same principle holds true with respect to the protection of 'overhead' traffic."

Rec. at 448.

On appeal, petitioners contend that the decisions of *Fox-Smythe* and *P. C. White*

---

1. Under the authority given, NCI may transport frozen foodstuffs from the shipper's plantsite in Plover, Wisconsin, to points in Connecticut, Delaware, Indiana, Kentucky, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, Vermont, West Virginia, and the District of Columbia.

2. In an interline operation, one carrier holds authority from A to B and another carrier holds authority from B to C. The two carriers can together transport a shipment from A to C by interchanging the freight from one carrier to the other at B.

were improperly applied to them. The crux of their argument is that the material adverse effect that those cases require a protestant to prove in order to obtain a restriction against interlining is only mandated when the need for unrestricted authority has been shown. They assert that NCI failed to show a public need for interlining.

The scope of our review is limited.

"The Administrative Procedure Act, 5 U.S.C. § 706(2) provides, *inter alia*, that a reviewing court shall set aside agency action if determined to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or unsupported by substantial evidence on the record as a whole.

"The ICC's interpretations of its regulations and the facts supporting a grant or denial of a certificate require recognition of its expertise and our deference thereto. *Koppel, Inc. v. United States*, 612 F.2d 1264 (10th Cir. 1979)."

*Midwestern Transportation, Inc. v. ICC*, 635 F.2d 771, 744 (10th Cir. 1980).

■ When the application in this case was filed and decided, an applicant for a motor carrier certificate had the burden of demonstrating that the proposed common carrier authority " 'is or will be required by the present or future public convenience and necessity'." [3] *See Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 441–442, 42 L.Ed.2d 447 (1974). The ICC's decision to grant NCI the authority to service Great American at its plantsite, based on a finding that the proposed service was responsive to a public need, is supported by substantial evidence.

■■ Once a certificate of authority is awarded, the right to interline is a statutory privilege incidental to the grant. *See* 49 U.S.C. § 10703(a)(4)(A) (formerly 49 U.S.C. § 316(c)); [4] *Howard Hall Co. v. United States*, 332 F.Supp. 1076, 1082 (N.D.Ala. 1971). An applicant is not required to establish the need for interlining to avoid a restriction against it. Because "the act itself encourages interchange by providing, in section 216(c), [5] a correlative privilege of establishing through routes with other common carriers by motor, rail, and water," *Fox-Smythe*, 106 M.C.C. at 18, the ICC has consistently maintained a policy against interlining restrictions. *Id.* Whether such a restriction should be imposed in the public interest is a determination committed to the discretion of the ICC. *See Frozen Foods*

---

**3.** In September 1977 when this application was filed, the standards applicable to the issuance of a certificate granting common carrier authority were set forth in 49 U.S.C. § 307(a), which provided that "the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity." This provision was repealed when the Revised Interstate Commerce Act was enacted October 17, 1978. Under the 1978 Act, section 307(a) was substantially re-enacted at 49 U.S.C. § 10922(a) (emphasis added), as follows:

"(a) Except as provided in this section and section 10930(a) of this title, the Interstate Commerce Commission shall issue a certificate to a person authorizing that person to provide transportation subject to the jurisdiction of the Commission under subchapter II or III of chapter 105 of this title as a motor common carrier ... of water common carrier, respectively, if the Commission finds that—

(1) the person is fit, willing, and able—
(A) to provide the transportation to be authorized by the certificate; and

(B) to comply with this subtitle and regulations of the Commission; and
(2) the transportation to be provided under the certificate *is or will be required by the present or future public convenience and necessity.*"

Both the decision of the ALJ and that of the ICC were rendered after the 1978 Act became effective. Although the Act was substantially amended again in 1980, the 1978 version of section 10922(a) is applicable to our review. *See Watkins Motor Lines, Inc. v. ICC*, 641 F.2d 1183, 1185–88 (5th Cir. 1981).

**4.** Section 10703(a)(4)(A) provides:

"(4)(A) A motor common carrier of property may establish through routes and joint rates and classifications applicable to them with other carriers of the same type, with rail and express carriers, and with water common carriers, including those referred to in subparagraph (D) of this paragraph."

**5.** 49 U.S.C. § 316(c) (current version at 49 U.S.C. § 10703(a)(4)(A)), *see* note 4 *supra*.

*Express, Inc. v. United States,* 346 F.Supp. 254, 262 (W.D.Tex.1972); *Sam Tanksley Trucking, Inc.,* 129 M.C.C. 470, 474 (1977); cf. *Midwest Coast Transport, Inc. v. ICC,* 536 F.2d 256, 261 (8th Cir. 1976) (plantsite restriction).

■■ The ICC has held that when protesting carriers can show "they would be materially and adversely affected" by a grant of unrestricted authority, *Fox-Smythe,* 106 M.C.C. at 18, public convenience and necessity may require a restriction against interlining.[6] This test is an appropriate method of determining when the benefit to the public from the unrestricted authority is outweighed by the harm to the public resulting from the inability of other shippers to maintain authorized service. *See Bowman Transportation,* 419 U.S. at 293–94, 95 S.Ct. at 445–446. Accordingly, the ICC's requirement of a showing of material adverse effect in the present case is not arbitrary or contrary to law.

■ The ALJ found a lack of evidence to support petitioners' contention that they would be materially affected without a restriction against interlining. The Board agreed. While petitioners established they had business subject to diversion by means of interlining, they failed to show what *percentage* of their total business would be lost assuming the diversion, or how this potential loss of business would affect their ability to serve the public. *See P. C. White,* 129 M.C.C. at 9. The mere possibility of traffic diversion is not a sufficient reason for restricting operating authority. *See P.A.K. Transport, Inc. v. United States,* 613 F.2d 351, 355 (1st Cir. 1980).

The decision of the ICC is affirmed.

---

**6.** On occasion, the ICC has indicated that other persuasive circumstances may also result in the imposition of an interlining restriction. *See, e.g., Sam Tanksley Trucking, Inc.,* 129 M.C.C. 470, 474–75 (1977). Such a determination is one peculiarly within the area of agency expertise.