AIRPORT SHUTTLE SERVICE,
INC., Petitioner,

v.

INTERSTATE COMMERCE COMMIS-
SION and United States of
America, Respondents,

Henry R. Kesterson d/b/a Galaxy
Limousine Service, Intervenor.

No. 80–2503.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 2, 1981.

Decided April 27, 1982.

James F. Flint, Washington, D. C., for petitioner.

Linda Joachim, Atty., I. C. C., for respondents. Richard A. Allen, Gen. Counsel, Kathleen M. Dollar, Associate Gen. Counsel, I. C. C., Robert B. Nicholson and Susan J. Atkinson, Attys., Dept. of Justice, Washington, D. C., were on the brief, for respondents.

Lawrence H. Schecker, Atty., I. C. C., Washington, D. C., also entered an appearance for respondents, I. C. C.

Chester A. Zyblut and R. Emery Clark, Washington, D. C., were on the brief, for intervenor.

Before LUMBARD *, Senior Circuit Judge of the United States Court of Appeals for the Second Circuit, and ROBB and MIKVA, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROBB.

ROBB, Circuit Judge:

The petitioner, Airport Shuttle Service, Inc., asks us to review a decision by the Interstate Commerce Commission, granting to intervenor Galaxy Limousine Service, Inc., authority to expand its service as a motor common carrier of passengers.[1] *See Henry R. Kesterson*, No. MC–129768 (I.C.C. Div. No. 1, Oct. 3, 1980). Finding that the Commission's decision is not supported by substantial evidence, we reverse.

Before it sought the additional authority granted by the Commission in this proceeding, Galaxy had been authorized to operate a passenger service between designated points in the northeastern United States.[2] On March 20, 1979 Galaxy requested an increase in its authority, so as to include service between all points in Kent and Sussex Counties, Del., on the one hand, and, on the other, Atlantic City, N.J., Baltimore, Md., Newark, N.J., New York, N.Y., Philadelphia, Pa., Washington, D. C., Dulles International Airport, Va., and McGuire Air Force Base, N.J. In support of its application Galaxy submitted twenty-four questionnaires completed by persons residing or working in Kent and Sussex Counties. Each questionnaire contained twenty-two questions.[3] Seven of the questions solicited background information concerning the per-

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1976).

1. The federal courts of appeals have exclusive jurisdiction to review decisions of the ICC. *See* 28 U.S.C. § 2342(5) (1976 & Supp. III 1979).

2. Galaxy held permanent authority to provide its service between Dover Air Force Base, Del., on the one hand, and, on the other, Baltimore, Md., Newark, N.J., New York, N.Y., Philadelphia, Pa., Washington, D. C., Baltimore-Washington International Airport, Md., Dulles International Airport, Va., McGuire Air Force Base,

N.J., and National Airport, Va. Galaxy held temporary authority to provide its service between Seaford, Del., and Baltimore, Md. In operating its service, Galaxy utilized two eleven-passenger vans, one seven-passenger van, one six-passenger van, and three smaller vans. *See generally* Henry R. Kesterson, No. MC–129768, slip op. at 1 (I.C.C. Rev. Bd. No. 1, June 20, 1980), *aff'd* (I.C.C. Div. No. 1, Oct. 3, 1980).

3. Listed below are the twenty-two questions:
   1. Please state your name and address.
   2. If you are giving a statement on behalf of your family and on your own behalf, state

son completing the questionnaire (Questions Nos. 1–7). Three questions concerned the quality of the existing service provided by Galaxy (Questions Nos. 14–16). The twelve remaining questions solicited data concerning the public demand or need for the authority requested. Of those twelve questions, six called for "yes" or "no" responses (Questions Nos. 8 & 9, 13, 18 & 19, 22). The final six questions were answerable in brief phrases (Questions Nos. 10–12, 17, 20 & 21); only in answering one of these questions would detail have been appropriate (Question No. 20). As might have been expected, all the answers were laconic and lacking in detail. Except for an affidavit given by Henry R. Kesterson, the sole owner of Galaxy, no additional evidence was offered in support of the application. Mr. Kesterson's affidavit added nothing substantial to the material contained in the questionnaire.

Three common carriers intervened in the proceedings to oppose Galaxy's application. They were Airport Shuttle, J. G. Exec., Inc., and Lewes Tours, Inc. Each of these carriers had previously been authorized by the

Commission to provide passenger services that overlapped in part the extended authority sought by Galaxy. The intervenors submitted evidence in support of their argument that a grant of additional authority to Galaxy would impact adversely on their existing operations in a way that would harm the public interest.

On June 20, 1980 the Commission's Review Board No. 1 issued a decision granting Galaxy's application for extended authority. The Review Board explained:

[Galaxy] presents statements from 24 present or potential future supporting users of its service .... In identical format, the statements provide a bare minimum of information as to the requirements of the parties involved....

\*　　\*　　\*　　\*　　\*　　\*

The evidence establishes a need for the proposed service. Applicant has provided supporting statements which, although somewhat lacking in detail, attest to a need for the proposed expansion of applicant's operations. Although they are not

the names and relationships of the members of your family for whom you make this statement.—a. If you are making this statement on behalf of a company or association, name the company or association.—b. Are you authorized to make this statement on their behalf.—c. By whom.

3. Are you familiar with Bob Kesterson-Galaxy Limousine Service.

4. Do you know the type of service he now provides.

5. Are you familiar with the proposal of Galaxy Limousine Service to transport passengers and their baggage, transporting not more than eleven (11) passengers in any one vehicle, in special operations, between Kent and Sussex Counties, Del., and Wrightstown, N.J., Newark, N.J., Washington, D. C., Dulles International Airport, Loudoun County, Va., Atlantic City, N.J., Philadelphia, Pa., and New York, N.Y.

6. Have you been advised by Bob Kesterson of the service proposed to be offered between Kent and Sussex Counties, Del. and the points noted above.

7. What type of business do you maintain.

8. Do you or your employees have a need for door-to-door passenger service.

9. Do you arrange for surface transportation from or to Kent/Sussex County.

10. To and from where would you propose to travel and use Galaxy's service.

11. How often would you take these trips to be offered by Galaxy.

12. How do you presently get to the points mentioned.—a. Is this satisfactory.

13. Would it be an advantage to have the Galaxy Service.

14. Have you used it in the past.

15. How do you find the service.

16. Are you familiar with the equipment and facilities of Galaxy, and, do you find them suitable.

17. What, if any, other comparable bus service is available to you, your family, or business in Kent/Sussex County.

18. Are you familiar with J. G. Exec., Airport Shuttle Service, or Lewes Tours, Inc.—a. Ever use them.

19. Have you found their services satisfactory to meet your needs.

20. If not, why not. Please be specific if you have any complaints with service from other carriers. If there is no such service, please so state.

21. Describe what you must presently do to travel between Kent/Sussex County, Del. and points in the application area.

22. Will you use the service if it is authorized.

See, e.g., Brief for Petitioner at appendix B.

as precise as we might desire, the supporting statements provide adequate support for the proposed service. *Henry R. Kesterson*, No. MC–129768, slip op. at 1–3 (I.C.C.Rev.Bd. No. 1, June 20, 1980), *aff'd* (I.C.C. Div. No. 1, Oct. 3, 1980). *See also* Joint Appendix at 62–64.

Administrative appeals were filed by the three intervening carriers. On October 3, 1980 the Commission's Division No. 1, sitting as an appellate body, summarily affirmed the Review Board's decision, concluding that "the findings of Review Board Number 1 are in accordance with the evidence and the applicable law." *Henry R. Kesterson*, No. MC–129768 (I.C.C. Div. No. 1, Oct. 3, 1980). *See also* Joint Appendix at 103. Airport Shuttle filed its petition for review by this court.[4]

Under the Interstate Commerce Act as revised by the Act of October 17, 1978, Pub.L.No. 95–473, § 10921, 92 Stat. 1409 (current version at 49 U.S.C. § 10921 (Supp. III 1979)), an interstate motor common carrier of passengers cannot operate without a certificate issued by the Commission authorizing the specific service to be provided. The standard to be applied by the Commission in determining whether a certificate should issue is found in section 10922(a) of the Act of October 17, 1978. That section provides:

> Except as provided in this section and section 10930(a) of this title, the Interstate Commerce Commission shall issue a certificate to a person authorizing that person to provide transportation subject to the jurisdiction of the Commission . . . as a motor common carrier of passengers . . . if the Commission finds that—
>
> (1) the person is fit, willing, and able—
> (A) to provide the transportation to be authorized by the certificate; and
> (B) to comply with this subtitle and regulations of the Commission; and
> (2) the transportation to be provided under the certificate is or will be required by the present or future public convenience and necessity.

Act of Oct. 17, 1978, Pub.L.No. 95–473, § 10922(a), 92 Stat. 1409, *as amended* by Act of July 1, 1980, Pub.L.No. 96–296, § 5(a)(1), 94 Stat. 794 (current version at 49 U.S.C.A. § 10922(a) (Supp.1981)).

The Commission traditionally has applied a three-part test in evaluating the evidence presented to satisfy the "present or future public convenience and necessity" standard of section 10922(a)(2) and its predecessors. Under this test the Commission must find (1) that the authority applied for will serve a useful public purpose in response to a public demand or need, (2) that the purpose cannot be served as well by existing carriers, and (3) that the purpose can be served by the applicant without impairing the operations of existing carriers in a way that would harm the public interest. *See Pan-American Bus Lines Operations*, 1 M.C.C. 190, 203 (1936).[5] The federal

---

**4.** J. G. Exec., Inc., filed a motion to intervene in this court. We granted the motion on January 14, 1981. Subsequently, however, J. G. Exec., Inc., moved for leave to withdraw. Leave was granted on April 9, 1981.

**5.** The evidentiary burden on the first two parts of the test is with the applicant. *May Trucking Co. v. United States*, 193 U.S.App.D.C. 195, 198, 593 F.2d 1349, 1352 (1979). Opponents of the application carry the burden on the final part of the test in that they must show that existing operations will be impaired in a way that would harm the public interest. *Id.* at 202, 593 F.2d at 1356.

The three-part *Pan-American* test recently has been revised by the Commission. *See* 44 Fed.Reg. 60296 (Oct. 19, 1979). In a published policy statement, the Commission announced that the second part of the test, (*i.e.*, that the purpose cannot be served as well by existing carriers), was to be eliminated. Furthermore, the Commission more explicitly defined the evidentiary burdens under the remaining two parts, saying:

> In determining applications for motor common carrier authority, we will apply these tests:
> (1) The applicant must demonstrate that the operation proposed will serve a useful public purpose responsive to a public demand or need.
> (2) The Commission will grant authority commensurate with the demonstrated purpose unless it is established by parties opposing the application that the entry of a new carrier into the field would endanger or impair the operations of existing common carriers to an extent contrary to the public interest.

courts of appeals are in accord in deferring to this interpretation of the "present or future public convenience and necessity" standard. *See, e.g., Watkins Motor Lines, Inc. v. ICC*, 641 F.2d 1183, 1188–89 (5th Cir. 1981); *Midwestern Transportation, Inc. v. ICC*, 635 F.2d 771, 776 (10th Cir. 1980); *P.A.K. Transport, Inc. v. United States*, 613 F.2d 351, 354 (1st Cir. 1980); *Argo-Collier Truck Lines Corp. v. United States*, 611 F.2d 149, 152 (6th Cir. 1979); *Greyhound Lines, Inc. v. United States*, 195 U.S.App. D.C. 185, 187, 600 F.2d 999, 1001 (1979) (per curiam); *Packer Transportation Co. v. United States*, 596 F.2d 891, 895 & n.6 (9th Cir. 1979); *Niedert Motor Service, Inc. v. United States*, 583 F.2d 954, 959 (7th Cir. 1978); *Tri-State Motor Transit Co. v. United States*, 570 F.2d 773, 777 (8th Cir. 1978); *Senn Trucking Co. v. ICC*, 560 F.2d 1179, 1183 (4th Cir. 1977). Judicial review of the Commission's decisions is limited to a determination of whether findings under the three-part test are supported by substantial evidence and are not arbitrary, capricious, or an abuse of discretion. 5 U.S.C. § 706(2)(A), (E) (1976). *See also Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 284, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974). Because we determine that in the present case the Commission's findings under the first two parts of this test are not supported by substantial evidence, we reverse the agency's decision.

■ Substantial evidence can be "something less than the weight of the evidence." *Consolo v. FMC*, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966). At a minimum however a decision is not sup-

ported by substantial evidence unless there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). *See also May Trucking Co. v. United States*, 193 U.S.App.D.C. 195, 198, 593 F.2d 1349, 1352 (1979).

■ We have described the evidence relied on by the Commission. It simply cannot be said that the routine, laconic, and untested responses to the twelve standardized questions relating to public demand or need provide "such relevant evidence as a reasonable mind might accept as adequate to support" a finding that the authority applied for will serve a useful public purpose in response to a public demand or need. Furthermore, assuming a public need were shown, this evidence provides no support for finding that the need cannot be served as well by existing carriers.[6] We need not decide what type of evidence is necessary to support a finding of "present or future public convenience and necessity". We do conclude however that answers to questionnaires which are of limited circulation and which produce skeletal responses, as was the case here, do not provide substantial evidence for such a finding. Accordingly, the Commission's decision is reversed.

*So ordered.*

---

44 Fed.Reg. 60296, 60299 (Oct. 19, 1979). This policy change was upheld as "a matter within the Commission's expertise" in *Assure Competitive Transportation, Inc. v. United States*, 635 F.2d 1301, 1307 (7th Cir. 1980).

The new standard is not to be applied, however, in the case at bar. When originally announced, the Commission established an effective date of November 19, 1979 for applying the new policy. 44 Fed.Reg. 60296 (Oct. 19, 1979). Subsequently the Commission determined that it would apply the new policy only to applications published in the Federal Register after November 30, 1979. *See Watkins Motor Lines,*

*Inc. v. ICC*, 641 F.2d 1183, 1189 n.10 (5th Cir. 1981); *Assure Competitive Transportation, Inc. v. United States*, 635 F.2d 1301, 1304 (7th Cir. 1980). The application in this case preceded the effective date, having been published on July 3, 1979. *See* 44 Fed.Reg. 39064.

6. Because we find that Galaxy did not fulfill its burden on the first two parts of the test, we need not pass on whether opponents of the application presented sufficient evidence to support a finding that a grant of the requested authority would impair existing operations in a way that would harm the public interest.