**AMERICAN TRUCKING ASSOCIATIONS, INC., Garrett Freightlines, Inc. and Milne Truck Lines, Inc., Petitioners,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents**

**and**

**WPX Freight System, Inc., Intervening Respondent.**

**Nos. 82–1115, 82–1116 and 82–1119.**

United States Court of Appeals, Tenth Circuit.

March 22, 1983.

---

William F. Baxter, Asst. Atty. Gen., and Robert B. Nicholson and Marion Jetton, Attys., on the joint brief with I.C.C., Dept. of Justice, Washington, D.C., for United States of America.

Eugene J. Toler, San Francisco, Cal., Gen. Atty. (Walter G. Treanor, San Francisco, Cal., with him on the brief), for WPX Freight System, Inc.

Kenneth E. Siegel, Washington, D.C. (Nelson J. Cooney, Gen. Counsel, Washington, D.C., with him on the brief), for American Trucking Associations, Inc.

Ann M. Pougiales of Hegarty, Pougiales, Loughran & Gulseth, San Francisco, Cal., on the joint brief with American Trucking Associations, Inc., for Garrett Freightlines, Inc. and Milne Truck Lines, Inc.

Laurence H. Schecker, Washington, D.C., Atty. (John Broadley, Gen. Counsel, and Henri F. Rush, Associate Gen. Counsel, Washington, D.C., with him on the brief), for I.C.C.

Before HOLLOWAY and McWILLIAMS, Circuit Judges, and TEMPLAR *, District Judge.

McWILLIAMS, Circuit Judge.

American Trucking Associations, Inc., Garrett Freight Lines, Inc., and Milne Truck Lines, Inc., acting jointly, filed petitions for review of three decisions of the Interstate Commerce Commission wherein. WPX Freight System, Inc. was granted three separate licenses for authority to operate as a motor carrier. The three peti-

* Honorable George Templar, United States District Judge for the District of Kansas, sitting by

tions were consolidated for hearing in this Court, and WPX was permitted to intervene.

WPX, a wholly-owned subsidiary of the Western Pacific Railroad Company, a class I rail carrier subject to the Interstate Commerce Act, was granted *unrestricted* authority to operate as a common motor carrier in each of the three ICC decisions. The fact that the grant of authority was in each case "unrestricted," and did not in some manner and to some degree limit or restrict WPX to the handling of freight in conjunction with its rail parent, is the root of the present controversy.

A preliminary reference at this point to the "special circumstances" doctrine might put the present controversy in focus at the outset. In deciding applications of rail affiliates, such as WPX, for motor carrier operating authority, the Commission has issued two types of certificates. One authorizes the rail affiliate to provide motor service which is "auxiliary to or supplemental of" the rail service of the parent company and the other type authorizes the provision of service which is unrestricted to that provided by the rail parent. In both types of cases, the Commission has been concerned with the adverse effects of intrusion by the railroads into the motor carrier industry. This interest in protecting the motor carrier industry from unjustified rail intrusion has been greatest in those cases where the rail affiliates seek unrestricted authority. In those cases, the rail affiliate has historically borne the burden of proving "special circumstances" in order to justify a grant of unrestricted authority.

Although the term "special circumstances" is itself not used in the statute, the doctrine of "special circumstances" is derived from 49 U.S.C. § 11344(c) and 49 U.S.C. § 10101. Section 10101 is a general statement of national transportation policy. Section 11344(c), in pertinent part, provides as follows:

designation.

[W]hen a rail carrier, or person controlled by or affiliated with a rail carrier, is an applicant and the transportation involves a motor carrier, the commission may approve and authorize the transaction only if it finds that the transaction is consistent with the public interest, will enable the rail carrier to use motor carrier transportation to public advantage in its operations, and will not unreasonably restrain competition.

In *American Trucking Assns., Inc. v. United States,* 355 U.S. 141, 149–50, 78 S.Ct. 165, 170, 2 L.Ed.2d 158 (1957), the Supreme Court held that the Commission had the power to grant a motor carrier subsidiary of a railroad unrestricted authority where "special circumstances" prevail, namely, where unrestricted operation by the rail-owned carrier are found on specific facts and circumstances to be in the public interest. The basic position of the petitioners in each of these consolidated proceedings is that in two proceedings the Commission paid only "lip-service" to the "special circumstances" requirement, and that in one proceeding the Commission did not even mention the "special circumstances" requirement.[1]

As indicated, WPX filed three applications for additional authority to carry general commodities, excepting Class A and B explosives and used household goods, over described routes.[2] These three proceedings are referred to by the parties as Nos. 4, 5, 6, and we shall adopt such reference in our discussion of the matter.

In No. 4, WPX's application was opposed, *inter alia,* by Garrett Freight Lines, Inc. and Milne Truck Lines, Inc., each of which is a petitioner in the present proceeding. The request of Garrett and Milne for an oral hearing was denied on the ground that there were no material facts in dispute, and the application was considered on the basis of written material submitted by both the applicant and the protestants under the Commission's modified procedure. A Review Board granted the application, and in so doing made no specific reference to the "special circumstance," doctrine. Garrett and Milne appealed the Review Board's action, and the Commission denied the appeals. American Trucking Associations, Inc. was thereafter permitted to intervene, but the Commission declined to re-open the matter. American Trucking, Garrett, and Milne then filed a petition in this Court to review, and set aside the Commission's action.

In No. 5, WPX's application was again opposed by Garrett and Milne. The application, with the objections thereto, was considered under the Commission's modified procedure and in this instance the Review Board denied WPX's application, finding that WPX had not met the "special circumstances" requirement. On appeal, the Commission set aside the decision of the Review Board and granted WPX's application. In so doing, the Commission found that WPX had met the "special circumstances" requirement and was entitled to a grant of unrestricted authority. Garrett and Milne then filed a petition in this Court to review and set aside the Commission's action.

In No. 6, WPX's application was opposed by Garrett and Milne, and the application was handled under the Commission's modi-

1. On January 6, 1983, the Interstate Commerce Commission issued a final policy statement in Ex Parte No. MC–156, Application for Motor Carrier Operating Authority by Railroads and Rail Affiliates. In it, the Commission concluded that in light of recent amendments to the Interstate Commerce Act embodied in the Motor Carrier Act of 1980, Public Law 96–296, and the Staggers Rail Act of 1980, Public Law 96–448, the "special circumstance" doctrine should be eliminated from motor carrier licensing proceedings.

In Case No. 83–4039, the American Trucking Associations, Inc. and others have filed a Peti-tion for Review with the United States Court of Appeals for the Fifth Circuit asking the Court to set aside, enjoin or vacate the order of the I.C.C. That petition is now pending.

2. At the time WPX filed the three applications with which we are here concerned, it held certain authority to transport general commodities, excepting Class A and B explosives and used household goods, but its lead certificate was restricted to operations which were auxiliary or supplemental to its railroad parent.

fied procedure, *i.e.,* no oral hearing. In this instance, the Review Board granted WPX's application and specifically found that the "special circumstances" requirement had been met. Garrett and Milne appealed, and the Commission denied the appeal. In this proceeding, as in No. 4, American Trucking was permitted to intervene, and its discretionary appeal was denied. American Trucking, Garrett, and Milne then filed in this Court a petition to review and set aside the Commission's action.

As stated, the petitioner's position here is that the Commission in granting WPX's applications did not follow the "special circumstances" rule. As concerns Nos. 5 and 6, petitioners contend that though the Commission concededly did mention the "special circumstances" rule, the underlying facts, as found by the Commission, did not justify the Commission's ultimate finding that "special circumstances" were present. As concerns No. 4, petitioners point out that neither the Review Board nor the Commission even mentioned the term "special circumstances."

WPX's counter argument is that in Nos. 5 and 6, the Commission found that "special circumstances," did exist, and that the findings of facts justified such an ultimate finding. As concerns No. 4, WPX admits, as it has to, that neither the Review Board nor the Commission ever used the term "special circumstances." However, WPX contends that there is no particular magic in words, and that the important thing is whether the facts as found by the Review Board, and later adopted by the Commission, showed that there were such "special circumstances," as that term is defined by statute and the courts, as would justify the grant of unrestricted authority. In this latter regard, WPX argues that the facts, as found, establish "special circumstances," even though the term itself was not used by the Review Board or the Commission. We are inclined to agree with WPX's argument.

As indicated, the doctrine of "special circumstances" has its roots in 49 U.S.C. § 11344(c), which provides that the Commission may grant authority to an affiliate of a railroad which seeks permission to transport by motor carrier only if such is consistent with public interest, will enable the railroad to use motor carrier transportation to public advantage, and will not unreasonably restrain competition. The key phrases in the statute, so far as we are concerned, are "public interest," "public advantage," and "not unreasonably restrain competition." Judicial decisions uniformly utilize, with slight variations, the terms used in the statute, and uphold a grant of unrestricted motor carrier authority to a railroad affiliate where such is in the "public interest."

■ It is axiomatic that the scope of review by an appellate court of a Commission decision is a narrow one. We may not set aside Commission action unless it be arbitrary, capricious, and an abuse of discretion, or unless it be otherwise not in accord with the law or unsupported by substantial evidence on the record as a whole. *Curtis, Inc. v. I.C.C.,* 669 F.2d 648, 651 (10th Cir.1982); *Koppel, Inc. v. United States,* 612 F.2d 1264, 1269–70 (10th Cir.1979). Our study of the record leads us to conclude that the Commission's decisions are neither arbitrary nor capricious.

We agree with WPX that the mere fact that in granting application No. 4, neither the Commission nor the Review Board used the term "special circumstances" is not decisive of the matter. The fact is that in the No. 4 proceeding the Commission did grant unrestricted authority. Hence, the critical issue becomes whether the specific findings, as made by the Review Board and as approved and adopted by the Commission, justified the action taken. In other words, are the findings as made the equivalent of a specific finding of "special circumstances."

Further, the fact that in connection with application No. 5 the Review Board found that there were no special circumstances is, of course, worthy of note, but does not end the matter. The Commission, on administrative review, reversed the Review Board on that particular matter and found that "special circumstances" did exist. Our problem then is whether the Commission's

findings on the matter are supported by the record.

Permeating, in one form or another, the Commission's decisions in each of these proceedings is the finding that "public interest" suggests the granting of unrestricted authority, as opposed to restricted authority. WPX's application in the No. 4 proceeding was supported by 125 entities which intended to use WPX's services if its application were affirmed. In proceeding No. 5, 39 entities proposed to use WPX's services if that particular application were granted. And in proceeding No. 6, 42 entities indicated a desire to use WPX's services if allowed to do so.

■ In its decisions the Commission made such illustrative findings as follows: (1) There was a prevailing public need for expedited direct-line motor carrier and intermodel service in the involved traffic corridors; (2) performance by WPX of the service for which application is sought will serve a useful public purpose, responsive to a public demand or need; (3) "public interest" is entitled to paramount consideration in determining "special circumstances" and flexibility, and discretion should be employed in making any determination of "special circumstances"; (4) "public need" for the proposed service has been shown by the evidence in the record; (5) granting of the application is not only in the "public interest," but enables the parent railroad to use WPX's services to "public advantage," and the like. Additionally, the Commission expressly found that the grant of unrestricted authority would not constitute an undue restraint of competition. In short, our study of the Commission's decisions indicates to us that, in accord with the provisions of 49 U.S.C. § 11344(c), the Commission did give careful consideration to just what was in the "public interest" and to the "public advantage," and, at the same time, would not "unreasonably restrain competition." Based on its findings, the Commission's grant of unrestricted authority was proper.

■ As indicated, each of these three applications was handled under the Commission's modified procedure for licensing motor carriers, and petitioners' requests to the Commission for oral hearings were in each instance denied. Petitioners claim that such was a denial of constitutional due process. We do not agree. The Commission's use of a so-called "modified" procedure has been upheld where material facts are not in dispute, and the statements offered in support of, and in opposition to, the application provide an adequate basis for resolution of the matter. See, for example, *Crete Carrier Corp. v. United States,* 577 F.2d 49 (8th Cir.1978). In placing the three applications of WPX on its modified docket, the Commission, under the described circumstances, did not deny petitioners due process.

■ With one exception, other points raised by the petitioners as grounds for reversal have been considered and are deemed to be without merit and require no comment. However, one matter, perhaps minor in nature, should be further considered by the Commission. In each of its applications, WPX sought authority to carry general commodities, excepting Class A and B explosives and household goods. In proceedings Nos. 4 and 5 the Commission excepted from its grant of authority "household goods." As concerns proceeding No. 6, however, the Commission did not except "household goods" from its grant of authority, even though WPX in its application did not seek authority to carry household goods. There is nothing in any of the material before us to indicate why the Commission excepted "household goods" in its grant of authority in proceedings Nos. 4 and 5, and did not similarly except in proceeding No. 6. This particular matter should be reconsidered by the Commission. Otherwise, the decisions of the Commission in each appeal are hereby affirmed.