**Claudia B. POTTER, Plaintiff,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant.**

Civ. No. 86–560LE.

United States District Court,
D. Oregon.

Jan. 20, 1987.

Stephen Frank, Portland, Or., for plaintiff.

Richard Wetmore, for defendant.

## ORDER

LEAVY, District Judge.

The plaintiff, Claudia Potter, brought this action under 42 U.S.C. § 405(g) to obtain judicial review of a final determination by the Secretary of Health and Human Services (Secretary) that she is not entitled to Supplemental Security Income (SSI) benefits from the period August 1, 1983 to June 5, 1985.

Ms. Potter applied for SSI disability benefits on February 22, 1982. The application was denied initially and on reconsideration. An administrative hearing was held on May 6, 1983, after which the Administrative Law Judge (ALJ) denied Ms. Potter benefits. The Appeals Council denied review on December 9, 1983 and Ms. Potter appealed to this court. In an order dated February 15, 1985, this court reversed the Secretary and ordered that Ms. Potter be paid benefits under her original application.

Pursuant to the court's order the Social Security Administration (SSA) assessed the amount of retroactive benefits due Ms. Potter. SSA awarded benefits for the period February 22, 1982 through July 31, 1983. However, SSA determined that she was not entitled to SSI benefits for the period August 1, 1983 through November 31, 1983 because she owned a house, in which she was not living, whose equity value exceeded the SSI resource limitation. SSA further determined that Ms. Potter was not entitled to benefits from December 1, 1983 through June 5, 1985, because she had sold the house and owned a sales contract worth $14,000.

Ms. Potter challenged the assessment. After a hearing, the ALJ issued a decision, dated February 10, 1986, concluding that Ms. Potter was not eligible for SSI benefits during the two periods because she exceeded the resource limitation.

## DISCUSSION

To be eligible for SSI benefits, an individual must have resources below $1500 [after January 1, 1985, the limit is $1600]. 42 U.S.C. § 1382(a)(1); 20 C.F.R. § 416.-1205(a). Resources are defined as

cash or other liquid assets or any real or personal property that an individual ... owns and could convert to cash to be used for his support and maintenance. If the individual has the right, authority or power to liquidate the property, or his share of the property, it is considered a resource.

20 C.F.R. § 416.1201(a). Liquid resources include cash or financial instruments convertible to cash. 20 C.F.R. § 416.1201(b). Nonliquid resources include both real and personal property, which are evaluated according to their equity value. 20 C.F.R. § 416.1201(c)(1).

When determining an individual's resources, SSA is required to exclude from consideration the claimant's home. 42 U.S.C. § 1382b(a)(1); 20 C.F.R. §§ 416.-1210(a), 1212(a). However, to be excludable, the home must be the claimant's principal place of residence. 20 C.F.R. § 416.-1212(a)(c).

Proceeds from the sale of a home are similarly excludable, but only to the extent that the proceeds are used to purchase another home which is similarly excluded within three months of receipt of the proceeds. 20 C.F.R. § 416.1212(d).

Ms. Potter concedes that she moved out of her house in August 1983. She testified at the hearing that she did so because she had lost her Aid to Families with Dependent Children (AFDC) grant in 1983 and could no longer make her house and utility payments. She therefore moved into a subsidized apartment, where her rent was $32 a month, later raised to $46. She continues to live in the apartment.

Ms. Potter's son, Charles, lived in the house and attempted to make the payments by means of his own wages and payments from roommates. He was unsuccessful, however. In June 1984, Ms. Potter was informed that foreclosure was imminent. In September 1984, she sold the house on contract for $32,000. The purchasers assumed all encumbrances and agreed to pay the balance, approximately $14,000, to Ms. Potter at the rate of about $150 a month, beginning in November 1984.

In September 1985, Ms. Potter sold the contract for $8,765. Ms. Potter used the proceeds to pay debts accrued over the past three years, including $1,000 to her son-in-law; $2900 to her daughter, Grace; $4200 to her son Charles; and $1,000 to her son, Kurt. As of October 1, 1985, Ms. Potter had "spent down" the proceeds below the statutory resource ceiling. She has received SSI benefits since then.

Ms. Potter contends that the SSA's unjustified failure to award her SSI benefits until three years and four months after her application caused her to incur substantial debts, and to meet living expenses she was ultimately forced to sell her home. She argues that to deny her benefits for the period during which she resided outside her house and carried the contract would be inequitable and a violation of Congressional intent to protect SSA beneficiaries from "some of the hardships of existence."

The court must decide whether the Secretary's findings are supported by substantial evidence in the record as a whole and whether the Secretary applied the correct legal standards. *Kail v. Heckler*, 722 F.2d 1496 (9th Cir.1984). The facts are undisputed; the issue before the court is whether the Secretary correctly applied the law.

The Secretary's interpretation of his own regulations is entitled to judicial deference, so long as the interpretation conforms to its wording and purpose. *St. Elizabeth Community Hospital v. Heckler*, 745 F.2d 587, 592 (9th Cir.1984); *see also Smith v. Califano*, 597 F.2d 152, 156 (9th Cir.), *cert. denied*, 444 U.S. 980, 100 S.Ct. 481, 62 L.Ed.2d 406 (1979).

Ms. Potter argues that the Secretary's interpretation of the law need not be followed in situations where inequitable results would follow. She relies on *Carter v. Heckler*, 573 F.Supp. 710 (E.D.N.Y.1983). In *Carter*, the plaintiff was awarded, in a lump sum, 14 months of retroactive disability and SSI benefits. The Secretary determined that the lump sum awarded caused the plaintiff's unearned income to exceed the statutory maximum, and that the plaintiff would therefore receive no benefits for that period, although the plaintiff had used the lump sum to pay debts incurred during the 14 months that she waited for benefits. The district court ordered the Secretary to recalculate the plaintiff's income, deducting the debt payments.

Ms. Potter argues that her resources, like the lump sum in *Carter*, should be regarded as money not "available to purchase the necessities of life," because they were used to discharge debts incurred before benefits were awarded. However, *Carter* is factually distinguishable from this case, in that the excess "unearned income" in *Carter* was disability payments from SSA. Here, however, the excess resource is not retroactive benefits but real property which Ms. Potter possessed before she applied for benefits, and which she converted to cash. As Ms. Potter concedes, had her excess resource been retroactive benefits from retroactive SSI benefits paid in a lump sum, they, like the "unearned income" in *Carter*, would have been excluded as a resource. *See* Memo in Support of Plaintiff's Complaint, p. 10 (quoting from § 12501(b) of the SSI Claims Manual).

The language of the Social Security Act and the Secretary's regulations clearly make Ms. Potter ineligible for SSI during the time that the house was not her place of residence. The sale contract—being property that Ms. Potter owned and did in fact convert to cash—meets the definition of "resource" in 20 C.F.R. §§ 416.1201(a) and (b). Thus, the Secretary's decision in this case does no violence to the language of the law; nor does it contravene the law's purpose of providing SSI only to those truly in need and without the resources to maintain themselves.

IT IS ORDERED that the Secretary's decision is affirmed.